**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | |
|---|---|
| IN THE MATTER OF PRIVATE SALE OF PROPERTY BY THE MILLCREEK TOWNSHIP SCHOOL DISTRICT | : No. 8 WAP 2017<br>:<br>: Appeal from the Order of the<br>: Commonwealth Court entered July 20,<br>: 2016 at No. 1922 CD 2015, reversing<br>: the Order of the Court of Common<br>: Pleas of Erie County entered<br>: September 10, 2015 at No. 12065-2015<br>: and remanding<br>:<br>ARGUED: October 18, 2017 |

**OPINION**

JUSTICE DONOHUE                                    DECIDED: June 1, 2018

This discretionary appeal addresses the role of a court following a school district's decision to conduct a private sale of an unused or unnecessary school building pursuant to section 7-707(3) of the Public School Code of 1949.[1]  For the reasons that

---

[1]  Act of March 10, 1949, P.L. 30, as amended.  Section 7-707 provides that a school board is authorized "to sell any unused and unnecessary land and buildings" utilizing one of the three following methods:

> (1) By public auction … ;
>
> (2) Upon sealed bids requested by the school board … ; [or]
>
> (3) At private sale, subject to the approval of the court of common pleas of the county in which the school district is located.  Approval of the court shall be on petition of the board of school directors, which petition shall be executed by the proper officers of the board, and shall contain a full and

(continued…)

follow, we conclude that a court's involvement in such cases is limited to either approving or disapproving the sale. This decision is limited to the considerations set forth in the statute. The statute requires a determination of whether the petition for private sale contains the requisite information and is adequately supported by the opinions of two disinterested individuals who are familiar with the real estate in the geographic area, have viewed the property for sale, and concluded that the proposed sale price "is a fair and reasonable one and in their opinion a better price than could be obtained at public sale." 24 P.S. § 7-707(3). The statute does not require, and thus courts may not consider, whether the sale serves the public interest. *See id.*

Ridgefield Elementary School ("Ridgefield") sits on 7.9 acres of land (the "Property"), which contain the school, a playground, a parking lot and open greenspace.

---

(…continued)

> complete description of the land proposed to be sold, a brief description and character of the building or buildings erected thereon, if any, the name of the prospective purchaser, the amount offered for the property, and shall have attached thereto an affidavit of at least two persons who are familiar with the values of real estate in the locality in which the land and buildings proposed to be sold are located, to the effect that they have examined the property, that the price offered therefor is a fair and reasonable one and in their opinion a better price than could be obtained at public sale, and that they are not interested, either directly or indirectly, in the purchase or sale thereof. Before the court may act upon any such petition it shall fix a time for a hearing thereon and shall direct that public notice thereof be given as provided in clause (1) of this section. A return of sale shall be made to the court after the sale has been consummated and the deed executed and delivered.

24 P.S. § 7-707(1)-(3).

Ridgefield is located in Millcreek Township (the "Township") and is in an R-1 single-family residential zoning district.

In 2013, the school board of Millcreek Township School District (the "School District") closed Ridgefield. The School District originally attempted to sell the Property through a sealed bid process, but it received no bids. In July 2014, the School District listed the Property for sale. In August 2014, Montessori Regional Charter School ("Montessori") offered the School District $1.1 million for the Property, but the School District rejected the offer. On December 4, 2014, VNet Holdings, LLC ("VNet") offered to purchase a portion of the Property for $1.1 million, contingent upon its ability to obtain a zoning variance and permission to rezone Lot 1 of the Property to a C-1 district for commercial use. VNet intended to use Lot 1 for its business offices.

On December 16, 2014, the School District filed an application seeking to subdivide the Property into three lots: Lot 1, approximately 5.9 acres, contained the school building, parking lot and playground; Lots 2 and 3, each approximately one acre, were entirely greenspace. The Township approved the subdivision request.

In January 2015, Montessori made another offer to purchase the entire Property, offering $1.1 million in cash plus its school and land located on Sterrettania Road in the Township (the "Sterrettania Property"), valued between $200,000 and $689,000. Montessori's updated offer included a provision for it to lease the Sterrettania Property from the School District for at least three years. The School District again rejected Montessori's offer.

In February 2015, the School District voted to accept VNet's offer to purchase Lot 1 for $1.1 million. The sales agreement required VNet to pay the School District a

$25,000 deposit, authorized VNet to finance up to $800,000 of the purchase price, and required final approvals for the sale, including rezoning, to be obtained no later than November 5, 2015.

On July 14, 2015, the School District petitioned the trial court pursuant to section 7-707(3) of the Public School Code for approval of the private sale of Lot 1 of the Property to VNet. *See supra*, note 1. As required by section 7-707(3), the School District appended to the petition affidavits from two certified real estate appraisers who were familiar with the value of real estate in the Township and had no interest in the purchase or sale in question. In the affidavits, each appraiser provided his opinion that the purchase price offered by VNet was fair and reasonable and that a better price could not be obtained at a public sale. On August 18, 2015, Montessori filed a petition to intervene and a motion to stay the hearing on the School District's sale to VNet as premature because the sale was contingent on VNet obtaining rezoning approval from the Township.

The trial court held a two-day hearing on the School District's plan to sell the Property to VNet on September 8 and 9, 2015. At the beginning of the hearing, the trial court declined to rule on either of Montessori's motions, but allowed Montessori to participate in the hearing, represented by counsel.

The School District's Superintendent William Hall ("Hall") testified that the School District chose to accept VNet's offer for the following reasons: its need for cash; its desire to keep Lots 2 and 3 for recreational use by the School District's students; and to put the majority of the property back on the tax rolls, as the Township could expect to receive $15,000 per year in tax revenue from Lot 1 of the Property. Hall also explained

that he advised the school board to reject Montessori's offer because he was concerned that the charter school would decrease the number of students attending the School District's schools. Hall further testified that the School District was not interested in acquiring the Sterrettania Property because he considered that property to be a liability as opposed to an asset.

The School District further presented testimony from Raymond Sammartino ("Sammartino") and Robert Glowacki ("Glowacki"), the two certified appraisers whose affidavits and reports were appended to the School District's petition for private sale. Both testified that they conducted appraisals of Lot 1 of the Property and that $1.1 million was fair, reasonable and a better price than the School District could expect if it was sold at a public sale. Both also testified that the highest and best use of Lot 1 was as an office building, as the market for elementary schools was weak.

Glowacki acknowledged that in a 2013 appraisal, he had concluded that obtaining permission to rezone the Property was unlikely and that use as an elementary school constituted the highest and best use of the Property. He testified that his opinion changed in 2015 because of changes in the market, leading him to opine that a professional office was also a highest and best use. Sammartino testified that he believed there was a reasonable probability that Lot 1 would be rezoned commercial, and that he was aware of "numerous commercial propert[ies]" in the vicinity of Lot 1. N.T., 9/8/2015, at 73, 75-76.

Sammartino further testified that he had previously appraised the Sterrettania Property, and that in his view, the inclusion of that property in Montessori's offer

"clouded negotiations rather than helped them." *Id.* at 65. He referred to the Sterrettania Property as "an albatross." *Id.* at 65-66.

Anthony Pirrello ("Pirrello"), Montessori's CEO, testified in opposition to the proposed sale. He explained that Montessori wished to purchase the Property to consolidate its school, which currently operates in two locations. According to Pirrello, Montessori also planned to increase its enrollment by approximately 100 students. Further, although VNet had not yet requested rezoning of Lot 1 of the Property, Pirrello testified that he attended a meeting of the Millcreek Planning Commission at which the Commission indicated its opposition to permitting the rezoning that would be required.[2]

Pirrello then made a new offer to purchase the entirety of the Property for $1.6 million in cash, with closing occurring as soon as possible. He testified that Montessori had just over $1.46 million in cash available and a commitment from a bank to finance the transaction, and presented Montessori's audited financial statement to the trial court. He further noted that in Montessori's possession, the public would have access to the greenspace in Lots 2 and 3, as well continued use of the playground and parking lot in Lot 1.

The trial court stated, on the record, that it found Pirrello's testimony to be incredible. It stated that it would not consider Pirrello's eleventh-hour oral offer to purchase the Property for $1.6 million, which was never tendered to the School District. The trial court referred to his testimony as "happy talk," and not a real offer to purchase. N.T., 9/9/2015, at 88-89.

---

[2] This testimony was contradicted by Sammartino, who testified that the planning commission did not previously recommend against rezoning the Property. N.T., 9/8/2015, at 77.

On September 10, 2015, the trial court entered an order approving the private sale of the Property to VNet and denying Montessori's stay and the intervention requests. On September 18, 2015, Montessori filed a motion for reconsideration and to supplement the record. Therein, Montessori asserted that the trial court erred by excluding its oral offer tendered at the hearing because it was sufficiently definite; erred by finding that the sale of Lot 1 to VNet was in the public interest because the subdivision of the Property has been challenged[3] and rezoning has not yet been requested; and erred by approving the private sale prior to the resolution of Montessori's declaratory judgment action challenging the deed restriction prohibiting the sale of the Property to a charter school.[4] It further sought to supplement the record with

_____

[3] Montessori (and others) appealed the subdivision to the Commonwealth Court and on September 16, 2016, the Commonwealth reversed that decision and remanded the case, directing the Township's Board of Supervisors "to issue a conditional approval that awaits the Township's approval of a variance or amendment to the Zoning Ordinance as necessary to allow Lot 1 to be used for a commercial purpose." *Montessori Reg'l Charter Sch. v. Millcreek Twp. Bd. of Supervisors*, 2468 C.D. 2015, 2016 WL 4937905, at *4 (Pa. Commw. Sept. 16, 2016) (unpublished decision).

[4] In August 2015, while decision on the School District's petition for approval of the private sale was pending, Montessori filed a complaint seeking a declaratory judgment based on the School District's resolution not to sell the Property to a charter school and its recordation of a restriction on the deed to the Property, which stated:

> UNDER AND SUBJECT to the following restrictive covenants that shall be deemed to be covenants running with the land that (1) Grantee and Grantee's successors, assigns and tenants **shall not use all or any part of the above-described property to run, operate, manage or conduct a "charter school"** as that term is defined in the Public School Code … and that (2) **no part of above-described property [shall] be sold, conveyed or otherwise transferred to, or leased, rented or occupied by a "charter school"** as that term is defined in the Public School Code … and that the forgoing restrictive covenants

(continued…)

an Erie Times-News article indicating that the School District extended the closing date on the sale to VNet. It also appended to the motion a written version of its offer to purchase the Property for $1.6 million. The trial court denied the motion on September 22, 2015.

Montessori filed a timely notice of appeal. In its written opinion, the trial court began by clarifying that, contrary to Montessori's claim in its motion for reconsideration and its 1925(b) statement, it did not **exclude** the oral offer from evidence, but after permitting its introduction, declined to consider it because of the "last minute tender" and its finding that Pirrello's testimony was incredible. Trial Court Opinion, 12/4/2015, at 5. The trial court held that its consideration of the offer would not have changed the result of the hearing because the oral offer was for the entirety of the Property, not just

---

(…continued)

        shall be included in any subsequent deed conveying all or
        part of the above-described property.

*Montessori Reg'l Charter Sch., Appellant v. Millcreek Twp. Sch. Dist.*, 248 C.D. 2016, 2016 WL 4627434, at *1 (Pa. Commw. Sept. 7, 2016) (unpublished decision) (emphasis supplied; citation to reproduced record omitted). Montessori sought a declaration that the School District could not include the above-quoted deed restriction; could not resolve to limit the potential purchasers of the Property; and that the sale to VNet was not ripe for approval. Montessori further sought a preliminary injunction prohibiting the School District from selling or further encumbering the Property. The School District filed preliminary objections, which the trial court sustained in January 2016 based on its conclusion that Montessori's declaratory judgment action was not ripe for review. Specifically, the trial court found "there is no actual controversy" as "[t]he current owner of the [] Property is not proposing to use it as a charter school or attempting to convey it to [Montessori] or another purchaser who desires to use it as a charter school." Trial Court Opinion, 01/22/2016, at 3. Based on the Commonwealth Court's decision in the case at bar to reverse the trial court's approval of the sale of Lot 1 to VNet, the Commonwealth Court vacated the trial court's decision that the request for declaratory relief was not ripe for review and remanded the matter for further consideration "now that the Ridgefield Property is to be auctioned at public sale." *Montessori Reg'l Charter Sch., Appellant*, 2016 WL 4627434, at *4.

Lot 1. *Id.* According to the trial court, "this variance between the terms of both offers would have precluded any meaningful consideration as to the fairness or reasonableness of VNet's offer, or whether a better price could be acquired at a public sale." *Id.*

The trial court stated that pursuant to section 7-707(3), the sole consideration before it was whether the purchase price was fair, reasonable and better than could be obtained at a public sale. *Id.* at 6. The court observed that case law also permits a trial court's consideration of "whether the sale is in the public's interest." *Id.* at 7 (citing *Petition of Bd. of Pub. Ed. of Sch. Dist. of Pittsburgh*, 405 A.2d 556, 558 (Pa. Commw. 1979) ("*Pittsburgh*"). The trial court found that the letter of the law was met through the testimony of the two experts presented. The trial court further found that "the public interest would be better served with VNet owning the one parcel, and the [School] District keeping the two remaining parcels as green space for recreational use" because it returned Lot 1 to the tax rolls and allowed the School District to continue to use Lots 2 and 3 for recreation. *Id.* at 7-8.

The trial court deemed Montessori's arguments regarding VNet's financial readiness to close and the School District's expenses leading up to closing as collateral to the question of whether the private sale to VNet should be approved. *Id.* at 8, 10. It also rejected Montessori's claim that the request for approval of the sale was premature because rezoning had not yet been approved and Montessori had appealed the subdivision of the Property, concluding that these arguments were irrelevant to the required considerations under section 7-707(3). *Id.* at 8-9.

On appeal, a majority of the Commonwealth Court disagreed and reversed the trial court's approval of the sale to VNet. It began by finding error in the trial court's failure to consider Montessori's new oral offer to purchase the Property made at the hearing. *In re Millcreek Twp. Sch. Dist.*, 143 A.2d 1037, 1045 (Pa. Commw. 2016). In so holding, the Commonwealth Court majority found this Court's prior decision in *Petition of Whitemarsh Twp. Sch. Dist*, 215 A.2d 644 (Pa. 1966), to be controlling, differentiating the case from the Commonwealth Court's decision in *Swift v. Abington Sch. Dist.*, 297 A.2d 538 (Pa. Commw. 1972) (en banc).

In *Whitemarsh*, this Court affirmed the common pleas court's decision to deny the school district's request for the approval of a private sale because the school district received an offer from another party at the hearing that was approximately five percent higher than the proposed sale price. *Id.* at 645. This Court held that "under the circumstances, we cannot find the lower court in error, when confronted with an involved real estate transaction, in denying the petition for approval and returning the matter to the school board where the competing factors of the market place would have a greater play and the exact nature of the various engagements could be more easily determined." *Id.* at 646.

In *Swift*, the Commonwealth Court affirmed the trial court's approval of the sale of an unused school building and lot despite the fact that a third party objected and offered $500 more for the property. *Swift*, 297 A.2d at 539-40. The Commonwealth Court held that the trial court did not abuse its discretion in approving the sale, explaining that a trial court "may properly approve a private sale despite a higher offer where the difference in price is small or where other circumstances regarding the sale negotiated

by the school board appeal to court's sound discretion." *Id.* at 540 (citing *Appeal of Imperial Cardiff Coal Co.*, 40 A.2d 163 (Pa. Super. 1944)). The Commonwealth Court affirmed the approval of the sale because the trial court "had before it only the prospect of a future offer at a small advance in price." *Id.*

The Commonwealth Court in the case at bar found that Montessori's offer made at the hearing was not a future offer for a small amount more than the proposed sale price, rendering *Swift* inapposite to the matter before it. *In re Millcreek Twp. Sch. Dist.*, 143 A.2d at 1045. The Commonwealth Court went on to state that "*Whitemarsh* teaches that a valid offer can be made at the hearing," and, without citation to the record or to any authority, that the offer orally tendered by Montessori at the hearing was, in fact, valid because "Montessori's offer was specific as to amount, means of financing and time for closing." *Id.* In reaching this conclusion, the Commonwealth Court did not address the credibility determination made by the trial court, nor did it confront the question of whether Montessori's offer of $1.6 million for the entirety of the Property was actually higher than VNet's offer to purchase only Lot 1 for $1.1 million. It did, however, find it to be "of no moment" that the School District was selling VNet only a portion of the Property and Montessori sought to purchase the Property in its entirety because the School District had, at one point, considered selling the Property as a whole. It further found that Montessori's offer permitted Lots 2 and 3 to remain for recreational use, without the need for a "buffer" between VNet and the neighboring properties, and relieving the School District of maintenance costs for those tracts, presumably finding that these factors also made Montessori's offer superior to VNet's. *Id.*

Because of "Montessori's longstanding interest in purchasing the Ridgefield property," and based on the higher offer orally made at the hearing, the Commonwealth Court found that the record did not support the trial court's finding that the proposed sale to VNet provided a better price than could be obtained at a public sale. *Id.* The Commonwealth Court found, "[c]onsistent with Section 707 of the Public School Code and *Whitemarsh*," that the trial court should have stopped the proceedings upon hearing Montessori's substantially higher offer and either ordered the School District to entertain further negotiations with Montessori or ordered a public sale of the Property, the latter of which it deemed to be "[t]he better course of action," because "a public sale is the preferred way to do a sale of unused property under Section 707 of the Public School Code." *Id.* at 1045-46.

The Commonwealth Court disagreed that the public interest should have been considered here, where a "substantially higher price" had been offered for the Property. *Id.* at 1046 (citing *Pittsburgh*, 405 A.2d at 559; 24 P.S. § 7-707(3)). Nonetheless, it stated that it did not believe that the sale to VNet served the public interest in this case. Relying on Montessori's request to supplement the record (discussed below), the Commonwealth Court found the trial court's reliance upon the $15,000 tax revenue expected from Lot 1 of the Property was shortsighted because it would take twenty years to make up for the costs that the School District would incur to maintain the Property in the two and a half years leading up to the new closing date with VNet. *Id.* Further, the Commonwealth Court found significant that VNet could sell the Property to a public charity in that timeframe, which could again remove the Property from the tax rolls. *Id.* The Commonwealth Court also considered the expense of maintaining Lots 2

and 3 the School District would retain "in order to help VNet obtain its spot zoning," and noted, "[a]s an aside" that it did not believe "illegal spot zoning" to be in the public interest. *Id.* at 1046-47.

The Commonwealth Court likewise found error and an abuse of discretion in the trial court's refusal to permit Montessori to supplement the record with the new date set for closing between VNet and the School District. According to the Commonwealth Court, the closing date was not a collateral issue, as the trial court found, but "impacts the overriding statutory standard, i.e., whether VNet's price is fair and reasonable and better than what could be obtained at a public sale," as the delay in closing substantially increased the costs to be borne by the School District to maintain the Property in the interim. *Id.* at 1047.

The Commonwealth Court majority summed up its opinion by stating that "the trial court erred and abused its discretion in concluding that the proposed sale to VNet served the public interest by giving a lopsided view of the record in favor of the School District." *Id.* It therefore reversed the trial court's decision approving the School District's private sale of Lot 1 of the Property to VNet. It further remanded the case, instructing the trial court to order a public sale pursuant to section 7-707(1) or (2) of the entire Property or, if the School District wants to retain Lots 2 and 3, or Lot 1 only.[5] *Id.* at 1048; *see also supra*, note 1.

Senior Judge Dan Pellegrini authored a dissenting opinion, finding that the majority "substitut[ed] its discretion for that of the School District's" and "order[ed] an

---

[5] The Commonwealth Court also addressed the question of Montessori's standing to bring the appeal, but this issue has been abandoned by the School District before this Court. We therefore omit from our discussion that portion of its decision.

improper remedy." *In re Millcreek Twp. Sch. Dist.*, 143 A.3d at 1048 (Pellegrini, J., dissenting). He stated that the court's review of the trial court's decision was limited to determining whether it abused its discretion in finding that the proposed sale of Lot 1 of the Property to VNet was fair, reasonable, and for a price better than could be obtained at a public sale. *Id.* at 1049 (citing 24 P.S. § 7-707(3)). In Judge Pellegrini's view, the majority went beyond this permissible scope and found "that Montessori's fundamentally dissimilar offer for the entire [] Property is more advantageous for the School District," and required the School District to conduct a public sale of the Property. *Id.* (citing *Petition of Sch. Bd. of Sch. Dist. of Borough of McKees Rocks*, 62 A.2d 20 (Pa. 1948) ("*McKees Rocks*"); *Swift*, 297 A.2d at 540). For his part, Judge Pelligrini would have affirmed the trial court's decision.

The School District filed a petition for allowance of appeal to this Court, which we granted to address the following issues:

> (1) Whether the Commonwealth Court had the authority under the Public School Code to order the public sale of Millcreek Township School District property pursuant to 24 P.S. § 7–707?
>
> (2) Whether the Commonwealth Court erred in reversing the decision of the Court of Common Pleas approving the private sale of Millcreek Township School District property under 24 P.S. § 7–707?

*Matter of Private Sale of Prop. by Millcreek Twp. Sch. Dist.*, 167 A.3d 710 (Pa. 2017) (per curiam). As both of these issues require an analysis of the statutory language of section 7-707 of the Public School Code, we consider them together.

The School District asserts that the Commonwealth Court's decision exceeds the authority granted to a court by section 7-707 of the Public School Code and contradicts

this Court's decision in *McKees Rocks*. According to the School District, both the statute and the *McKees Rocks* decision provide for a court to approve or disapprove of a private sale; it may not otherwise control the manner of sale of school district property. The School District also contends that there is no statutory support for the Commonwealth Court's assertion that a public sale is a "preferred" manner of disposing of school property. School District's Brief at 14-15.

The School District further argues that the Commonwealth Court erred by finding that the offer made by Montessori at the hearing required the trial court to disapprove of the proposed private sale of Lot 1 to VNet. The School District contends that the intermediate appellate court ignored that the offer made at the hearing was materially different than the one presented by the School District for the trial court's consideration and improperly made its own findings regarding whether the sale to VNet was in the public interest.

Montessori responds, differentiating *McKees Rocks* on its facts, and arguing that the Commonwealth Court's decision in the case at bar was not constrained by the *McKees Rocks* decision. Relying on cases that did not involve the sale of school property, Montessori asserts that "the courts have an obligation to intervene" when a school board contravenes the public interest "and by its decree, the court should indicate the proper course to be pursued." Montessori's Brief at 16-17 (citing *Ritzman v. Sch. Directors of Coal Twp.*, 176 A. 447, 448 (Pa. 1935); *Lamb v. Redding*, 83 A. 362 (Pa. 1912)).[6]

---

[6] Pennsylvania Coalition of Public Charter Schools filed an amicus brief in support of Montessori asserting, in relevant part, that the Commonwealth Court's decision should (continued…)

Montessori asserts that the trial court's discretion "is not unfettered," and the Commonwealth Court's decision here aligns with the evidence of record and the law. *Id.* at 25. Montessori discusses various aspects of the sale to VNet that it contends do not serve the public interest and asserts that these considerations required the reversal of the trial court's decision.

Montessori further argues that the trial court's failure to consider its $1.6 million offer to purchase the Property was error, agreeing with the Commonwealth Court's analysis that *Whitemarsh* compels this conclusion. Montessori states that its oral offer made at the hearing was both legally binding and permissible.

Our standard of review for questions of statutory interpretation is de novo and our scope of review is plenary. *In re Borough of Downingtown*, 161 A.3d 844, 870 (Pa. 2017). We are thus mindful of the settled principles of statutory interpretation. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). The first and best indication of legislative intent is the language used by the General Assembly in the statute.

_____

(…continued)
be affirmed because a public sale is the preferred manner for a school district to dispose of school property. Amicus Brief at 16-17. Because the School District harmed the public interest by rejecting a higher offer to purchase the Property than it was offered by VNet, the amicus argues that this Court should affirm the Commonwealth Court's decision to remand for the School District to conduct a public sale of the Property. *Id.* at 18-19.

The amicus presents additional arguments, raising claims that the School District unlawfully discriminated against Montessori by refusing to sell the Property to it and violated public policy by including a restrictive covenant on the Property prohibiting its sale to a charter school. *See* Amicus Brief at 9-15, 20-28. Neither of these arguments are presently before this Court in this appeal and we therefore do not consider them. *See Commonwealth v. Cotto*, 753 A.2d 217, 224 (Pa. 2000) ("amicus curiae may file a brief regarding those questions before the Court") (italicization and emphasis omitted).

*Commonwealth v. Veon*, 150 A.3d 435, 444-45 (Pa. 2016). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Only if the statute is ambiguous, and not explicit, do we resort to other means of discerning legislative intent. *A.S. v. Pennsylvania State Police*, 143 A.3d 896, 903 (Pa. 2016); 1 Pa.C.S. § 1921(c).

The pertinent language of section 7-707 is unambiguous: "The **board of school directors** of any district is hereby vested with the necessary power and authority to sell unused and unnecessary lands and buildings, **by any of the following methods** and subject to the following provisions."[7] 24 P.S. § 7-707 (emphasis added). One permissible method of sale is a "private sale," approved by the common pleas court where the school district is located. 24 P.S. § 7-707(3). To obtain such approval, the school board must file a petition before the court of common pleas, which must include

> a full and complete description of the land proposed to be sold, a brief description and character of the building or buildings erected thereon, if any, the name of the prospective purchaser, the amount offered for the property, and shall have attached thereto an affidavit of at least two persons who are familiar with the values of real estate in the locality in which the land and buildings proposed to be sold are located, to the effect that they have examined the property, that the price offered therefor is a fair and reasonable one and in their opinion a better price than could be obtained at public sale, and that they are not interested, either directly or indirectly, in the purchase or sale thereof.

*Id.*

---

[7] We disagree with the Commonwealth Court and Montessori's amicus that the statutory language suggests a preference for a public sale of school property over a private sale. As stated above, section 7-707 plainly provides that it is left to the school board's discretion to utilize "any of the following methods" to conduct a sale of unused or unnecessary school property. It contains no qualifying language or suggestion that a private sale is disfavored.

Thus, pursuant to its plain language, section 7-707 provides a school board with discretion to determine which school district property will be sold and the method by which to sell it. The only constraint on the School Board's discretion is that, for private sales of school property, it must receive the approval of the common pleas court, which requires the presentation of evidence that the price to be paid for the property is fair, reasonable and better than could be obtained at a public sale. Those are the sole factors before the trial court for its consideration.

No statutory language allows a court to direct the manner of sale (public vs. private) of school property, as the Commonwealth Court did here. By the statute's terms, a court's authority under section 7-707(3) is limited to the approval or disapproval of a request by the school board to sell public school property based on its consideration of the information presented in support of (and against) the proposed private sale, i.e., whether the proposed price is fair, reasonable and a better one than could be obtained at a public sale.

This Court so held in *McKees Rocks* when interpreting 24 P.S. § 672a,[8] the predecessor to section 7-707, and which, in pertinent part, contained identical language to the current version of the statute. *See McKees Rocks*, 62 A.2d at 21 (quoting 24 P.S. § 642a). In *McKees Rocks*, the school board petitioned the court of common pleas to approve the sale of its school to a private individual for $15,000. At the hearing on the sale, a local church made an offer to purchase the school building for $16,000, prompting the private individual to raise his own offer to $16,750. Over the course of

---

[8] Repealed by Act of March 10, 1949, P.L. 30. This Act also enacted the Public School Code of 1949. *See supra*, note 1.

the next several weeks, the church countered with an offer of $17,000, and the private individual once again raised his offer to $17,250. For reasons unclear in the opinion, the court of common pleas then directed the school board to conduct a private sale of the school to the church for $17,000. *Id.* at 22.

On appeal, this Court reversed. While finding no error in the trial court's decision not to approve the private sale for $15,000 in the face of "substantially higher offers," the Court observed that it was beyond the scope of the trial court's authority to direct the sale:

> **Courts, in the absence of statutory provision, do not possess the control and supervision of assets of school districts.** The legislature has delegated to the board of directors of the school district the duty, inter alia, of purchasing and selling the real estate for the school districts. The sole restriction placed upon such power is when the board sells unused and unnecessary school lands and buildings at private sale. The legislature has imposed limitations on such a sale. Before the School Board may consummate a private sale of such real estate, approval of the court must first be obtained. But the Act does not impose the duty on the court to make the sale. That duty rests with the board. **The sole function of the court is to approve or disapprove the proposed private sale.**

*Id.* (emphasis added). Accordingly, as the highlighted language reflects, pursuant to section 7-707, the trial court's only role is to approve or disapprove the sale presented for its consideration. It is not the trial court's function either to select the buyer (as in *McKees Rocks*) or, as the Commonwealth Court did here, to direct the School Board to conduct a public, rather than a private, sale.

Furthermore, the statutory scheme neither requires nor permits the trial court to consider the public interest in determining whether to approve a proposed private sale. Nor is there support for this proposition from the decisions of this Court. Instead, we

have stated that the trial court's discretion is strictly constrained by the statute. *Id.* In *Whitemarsh*, for example, this Court observed that it was unclear whether the higher offer made by a third party at the hearing would ultimately be contingent upon the offeror's ability to obtain a zoning variance, subdivision approval, and/or connection to the existing sanitary sewer system in the township. We found, however, that it was not "the duty of the court below to determine the impact of this higher offer in order to consummate a sale with the third party. … That duty rests with the board." *Id.* (citing *McKees Rocks*, 62 A.2d at 22).[9]

---

[9] A public interest analysis was first injected into private sale of school property cases by the Commonwealth Court in *Pittsburgh*. In that case, the Commonwealth Court stated that "equitable considerations should operate so as to favorably influence a court's approval of the petition for sale," identifying one such consideration as "whether the interests of the public would be better served if the proposed sale were to be approved." *Pittsburgh*, 405 A.2d at 558. The *Pittsburgh* court stated that the trial court "must ascertain whether the proposed sale is in the public interest" because the availability of a higher offer to purchase the property "is only one factor to be considered … and is not necessarily controlling with regard to the approval or disapproval of the sale." *Id.* at 558. In support of this assertion, the *Pittsburgh* court cited to *Swift* and its statement that a private sale may be approved by the trial court "despite a higher offer where the difference in price is small or where **other circumstances regarding the sale negotiated by the school board appeal to the court's sound discretion**." *Swift*, 297 A.2d at 540 (emphasis added).

*Swift*, in turn, cited generally to *Appeal of Imperial Cardiff Coal Co.* as support for its conclusion that "other circumstances" can be considered by the trial court in determining whether to approve a private sale of school property under section 7-707(3). *Imperial Cardiff Coal*, however, involved the sale by a municipality of unredeemed land bought at a tax sale for the nonpayment of taxes pursuant to the version of 72 P.S. § 5878a then in existence. Section 5878a permitted a municipality to sell the land by private sale "subject to the approval of the court of common pleas upon petition and hearing." *Id.* at 164. Pursuant to the statute, the common pleas court was required to give its approval if "the court is satisfied that the proposed private sale is proper and to the advantage of all the taxing authorities interested." *Id.* In response to a claim of error that the trial court improperly approved a private sale that was not for the highest price offered, the *Imperial Cardiff Coal* court observed that "the statute does not prohibit the approval of a sale at a figure less than the highest possible price that could be obtained by the (continued…)

Pursuant to the plain language of section 7-703(3), the sole consideration before the trial court centers on the **price** to be paid for the property, specifically whether it "is a fair and reasonable one and … a better price than could be obtained at public sale." 24 P.S. § 7-707(3). By its ordinary meaning, the word, the "price" refers to "[t]he amount of money or other consideration asked for or given in exchange for something else; the cost at which something is bought or sold." Black's Law Dictionary, 1380 (10th ed. 2014). *See also* 1 Pa.C.S.A. 1903 ("Words and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]"). It is not the trial court's function to second guess a school board's reasons for selling its property to one entity over another. These are policy decisions to be made by the elected representatives serving on the school board, not the courts. The statute focuses exclusively on the price to be paid for the subject property, not whether it is in

---

(…continued)
municipality, and such a provision should not be written into the Act by construction." *Id.*

> The criterion by which the court is to gauge the merits of a proposed sale is not established as the largest sum which the property will bring, but rather whether the prospective terms of sale 'satisfy' that court that the bargain is 'proper and to the advantage of all the taxing authorities interested.' Therefore, it cannot be said as a matter of law that an outstanding higher bid makes the approval of a sale under the statute erroneous where other circumstances have successfully appealed to a sound judicial discretion.

*Id.* at 164-65. As the above-quoted passage reveals, the statement incorporated into the *Swift* decision was pulled from *Imperial Cardiff Coal*'s statutory construction analysis of section 5878a. Read in context, it clearly has no applicability in cases decided under section 7-707(3). We therefore reject this aspect of the Commonwealth Court's decisions in *Swift* and *Pittsburgh*.

the best interest of the school board or the public for the court to approve the proposed private sale.

We turn now to the Commonwealth Court's finding that the trial court erred by failing to consider Montessori's offer to purchase the entire Property made at the hearing on the proposed sale of Lot 1 of the Property to VNet. The Commonwealth Court is correct that, in *Whitemarsh*, this Court affirmed the trial court's decision to disapprove a proposed private sale of school property because there was a higher offer made by a third party at the hearing on the proposed sale. Unlike in *Whitemarsh*, however, we are not confronted in the case at bar with the question of whether a better offer for the same property was made.[10] As the trial court below found, the offer made by Montessori at the hearing was not commensurate with the proposed sale before the trial court for its consideration. The trial court was only considering whether to approve the sale of 5.9 acres of the School District's property for $1.1 million. This was the property that the School District deemed to be unused and unnecessary; at the time of the hearing, the School District had decided that it would continue to use the remaining two acres of the Property for recreational purposes. Again, we reiterate that pursuant to the unambiguous terms of section 7-707, the trial court's only role is to consider the proposed sale before it and either grant its approval of the sale or disapprove it, based on its consideration of the evidence presented in support of a finding that the proposed sale price is fair, reasonable and better than could be obtained at a public sale. 24 P.S. § 7-707(3).

_____

[10] We therefore need not address the question of whether the oral offer made by Montessori at the hearing was a legally valid and binding offer.

Therefore, the Commonwealth Court's finding that it was "of no moment" that the proposed sale that was before the trial court for its approval was for 5.9 acres, and that the trial court thus should have considered Montessori's offer for 7.9 acres, was error. *See In re Millcreek Twp. Sch. Dist.*, 143 A.3d at 1045. In point of fact, it was "of no moment" that the School District had previously contemplated selling all 7.9 acres. The only sale of school property that was presented for the trial court's consideration was the sale of Lot 1, and the trial court's consideration was limited to determining whether the proposed price satisfied the statutory requirements. The statute unquestionably does not bestow upon the trial court the authority to determine whether school property is unused and unnecessary or whether more school property should instead be sold.

This Court has never retreated from our holdings in *McKees Rocks* and *Whitemarsh*. Nor do we do so today. A trial court's role in ruling upon a request for a private sale of unused or unnecessary school property is constrained by the statute. It is limited to approving or disapproving the sale of school property before it based on its assessment of the evidence, presented at a public hearing, that the proposed sale price "is a fair and reasonable one and … a better price than could be obtained at public sale." 24 P.S. § 7-707(3).

Based on the forgoing, we conclude that the Commonwealth Court based its decision on an erroneous interpretation of section 7-707(3) and the prior decisions of this Court. We therefore reverse the decision of the Commonwealth Court and remand the case for disposition consistent with this Opinion.

Chief Justice Saylor and Justices Baer, Todd, Dougherty and Wecht join the opinion.

Justice Mundy concurs in the result.