IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rausch Creek Off-Road Park, LLC,  :
                 Appellant  :
                                  :
                                  :   No. 550 C.D. 2020
        v.                     :
                                  :   Argued: March 15, 2021
Tremont Township, Schuylkill County  :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
JUDGE McCULLOUGH                       FILED: September 21, 2021

        Rausch Creek Off-Road Park, LLC (Rausch Creek) appeals from the May 20, 2020 order of the Court of Common of Pleas of Schuylkill County (trial court), which entered judgment in the amount of $7,699.88 in favor of Tremont Township (Township) under its Amusement Tax Ordinance (ATO)[1] which was passed on October 1, 2018, and became effective November 1, 2018 (New ATO).

        The Township levies a 7% tax on amusements[2] under the New ATO. The Township's former ATO (Former ATO), which was enacted in 1953 and revised

---

[1] Tremont Township Pa. Ordinance (2018).

[2] Amusements are defined under the New ATO as

> [a]ll manner and forms of entertainment, subject to tax as set forth in [T]he Local Tax Enabling Act, [Act of December 31, 1965, P.L. 1257, No. 511, *as amended*, 53 P.S. §§6924.101 to 6924.901], including but not limited to theatrical performances, concerts, circuses, carnivals, side shows, all forms of entertainment at fairgrounds and amusement parks, floor shows, dancing exhibitions,

**(Footnote continued on next page…)**

on July 10, 1995, levied a 10% tax on amusements. Rausch Creek alleges that under section 8402(c)(2) of the General Local Government Code, 53 Pa.C.S. §8402(c)(2) (Section 8402), the amount that the Township can tax for amusements is capped at 5%. Section 8402(c)(2) provides that a municipality which "has on or before December 31, 1997 levied . . . an amusement [tax]" may continue to do so, at a rate which does not exceed the effective rate collected by the municipality on December 31, 1997, or 5%, whichever is greater. 53 Pa.C.S. §8402(c)(2). The question here is whether, under Section 8402(c)(2), the Township can levy an amusement tax higher than 5%?

## Factual Background

On September 27, 2019, the Township filed a two-count civil complaint (Complaint) against Rausch Creek. (Reproduced Record (R.R.) at 11a.) Under Count One, the Township sought $7,699.88 in damages for outstanding taxes, plus interests and costs. Count One was based on the allegation that under the New ATO, amusements are taxed at 7% of the gross receipts, and that from November 1, 2018, to June 30, 2019, Rausch Creek only paid 5%. The Complaint also alleged that Rausch Creek was liable to pay an additional 1.5% penalty of all gross receipts for

---

trade shows, craft shows, art shows, and exhibitions, sporting events, off-road vehicle trail riding, any and all forms of live entertainment, and all other forms of diversion, sport, recreation[,] or pastime for which admissions charges are obtained from the general public or a limited or selected number thereof, directly or indirectly. Except, however, the following shall not be subject to the tax: fees charged as rentals for real property to be used for camping purposes; admissions to motion picture theaters; and, any other activities exempted form tax liability in [T]he Local Tax Enabling Act.

(New ATO, §III(B).)

2

unpaid taxes, and an additional 10% penalty for all taxes that are due and owing. (R.R. at 11a-12a.)

Under Count Two, the Township sought a declaratory judgment that Section 8402(c)(2) does not limit the taxable rate to 5%, because the Former ATO which existed on December 31, 1997, levied a 10% amusement tax, and therefore, it can levy a rate above 5%. (R.R. at 12a-13a.) Rausch Creek answered the Complaint on October 16, 2019. (R.R. at 31a-34a.)

On May 20, 2020, following a non-jury trial, the trial court entered an order, which stated the following:

1. The Township may colle[c]t [a] 7% Amusement Tax in accordance with its [New ATO].

2. The Township may collect [an] 8.5% Amusement Tax for any delinquent taxes in accordance with [section] VII[(E)] of its [New ATO] and assess the appropriate penalty in accordance with [section] VIII of its [New ATO].

3. Judgment is entered in favor of the [Township] and against [Rausch Creek] in the amount of $7,699.88 for Amusement Tax[es] owed for the 4th Quarter of 2018, and the 1st and 2nd Quarter[s] of 2019.

4. The [Township] shall send [Rausch Creek] an invoice for the delinquent taxes for the 3rd and 4th quarter[s] of 2019, and for the 1st quarter of 2020 in accordance with its [New ATO].

5. [Rausch Creek] shall pay Amusement Tax in accordance with the [New ATO] at the rate of 7% for the 2nd quarter of 2020 and for all future quarters.

(R.R. at 7a.) The trial court issued an opinion in support of its May 20, 2020 Order. (R.R. at 3a-6a.) By way of background the trial court explained: Rausch Creek is an

3

off-road park, 66% of which is located in the Township. (Trial ct. op. at 1.) The parties agree that Rausch Creek is required to pay an amusement tax for the portion of its park that is located in the Township. *Id.* The Township contended that it is entitled to a 7% amusement tax in accordance with its New ATO. *Id.* Rausch Creek argued that the highest tax rate it can be charged is 5% under Section 8402(c)(2), 53 Pa.C.S. §8402(c)(2). *Id.* The Township's Former ATO, which was enacted in 1953, and was revised on July 10, 1995, imposed a 10% tax rate on amusements. *Id.* On October 1, 2018, the Township enacted the New ATO, which set the amusement tax rate at 7%. *Id.*

The trial court concluded that Rausch Creek was responsible to pay a 7% amusement tax on all gross receipts. (Trial ct. op. at 1-2.) It also concluded that Rausch Creek was liable to pay a penalty of 1.5% of all gross receipts for taxes which were not paid by the deadlines set forth in section VII(E) of the New ATO, and a 10% penalty set forth under section VIII of the New ATO. *Id.* at 2. The court determined that for the period from November 1, 2018, through June 30, 2019, Rausch Creek paid an amount equal to 5% of its gross receipts, not 7% as required under the New ATO. *Id.* at 2. Thus, the court held that Rausch Creek owed $7,699.88 in unpaid taxes, plus interests and costs. *Id.* at 2. That amount reflected unpaid taxes for the 4th quarter of 2018, the 1st and 2nd quarters of 2019, and a 10% penalty. *Id.*

The trial court examined the language of Section 8402(c)(2), which provides that "any municipality which has on or before December 31, 1997 levied, assessed or collected or provided for the levying, assessment or collection of an amusement [tax] . . . may continue . . . to collect on such subjects upon which the tax was imposed by the municipality as of December 31, 1997, at a **rate not to**

4

**exceed the effective rate** as collected by the municipality as of December 31, 1997, or 5%, whichever is greater[.]" (Trial ct. op. at 4) (emphasis in original). The trial court explained that this language "specifically states that the rate cannot exceed the rate that was effective on December 31, 1997[,] which the Township was collecting . . . at the rate of 10%." *Id*. Thus, the trial court held that the Township was permitted to collect its tax at the rate of 7% under the New ATO. *Id*. Rausch Creek appealed to this Court.[3]

## Discussion

On appeal,[4] Rausch Creek raises the single issue of whether the trial court erred in holding that Section 8402(c)(2) permits the Township to levy a 7% amusement tax under the New ATO.

Rausch Creek argues that the maximum lawful tax rate that can be levied for amusements under Section 8402(c)(2) is 5%. Rausch Creek argues that under Section 8402(c)(2) because the Township *repealed* the Former ATO of 10%, but did not *amend* it, the Township cannot levy a tax more than 5%.

In response, the Township recognizes the Former ATO levied a tax at a rate of 10%, and on November 1, 2018, the New ATO became effective at a rate of 7%. It maintains that the language of Section 8402(c)(2) clearly indicates that a

---

[3] The trial court issued an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a), wherein it adopted its May 20, 2020 opinion.

[4] Our review is limited to determining whether the trial court abused its discretion, committed an error of law, or reached a decision not supported by substantial evidence. *Melcher v. Berks County Board of Assessment Appeals*, 93 A.3d 522, 527 (Pa. Cmwlth. 2014). As to questions of law, including questions of statutory interpretation, our standard of review is *de novo*, and our scope of review is plenary. *Newman Development Group of Pottstown, LLC v. Genuardi's Family Markets, Inc.*, 52 A.3d 1233, 1239 (Pa. 2012).

5

municipality, which *had* an amusement tax ordinance as of December 31, 1997, could continue to levy such a tax as high as 5% or the rate that existed as of December 31, 1997, or 5%, whichever is greater.  Thus, it maintains that Section 8402(c)(2), in context, does not put a 5% cap on the amusement taxes which it can levy.

**Discussion of Relevant Ordinances**

The part of the Former ATO that imposed the amusement tax provided, in full, that "**[a] tax is imposed, for general revenue purposes, at the rate of (10%) percent of the admission price to each amusement within the Township** for which the individual admission price is ten (10) cents or more."  (Former ATO, §303.)  The Former ATO was enacted on May 21, 1953, and was revised on July 10, 1995.  *Id*.  The New ATO repealed all prior ordinances, stating; "[a]ll Ordinances or parts of Ordinances which are inconsistent herewith are hereby repealed upon the effective date of these Ordinances."  (New ATO, §XV.)  As for the amount of the tax, the New ATO provides, in full, that

> **[a] tax is hereby levied, assessed[,] and imposed, for general Township purposes, upon the admission to any amusement within the Township, at the rate of seven percent (7%) of the admission charged and collected**, such tax to be paid by the person charged or paying the admission.  Provided, where no fixed admission is charged, the tax shall be paid upon the gross amount collected, and shall be paid by the producer, if not paid by the person charged or paying such admission.
>
> In the event a producer operates an amusement which is located partly within Tremont Township and partly outside Tremont Township, the Tremont Township Supervisors may, in their discretion, upon request from the producer, reduce the tax rate in proportion to the

6

percentage of the amusement that is outside of Tremont Township.

(New ATO, §IV (emphasis added)).  Under section VII(E),

> [e]very producer, at the time of making every report required by the ordinance, shall compute and pay to the Township or its representative, the taxes collected by the producer and due to the Township during the period for which the report is made.  If any producer fails to file a quarterly report or fails to pay the tax due by the 15th day of the month following the due date, the tax rate payable shall be eight and one half percent (8.5%).

(New ATO, §VII.)  Thus, if a producer, such as Rausch Creek, fails to file a quarterly report or pay taxes by the "15th day of the month following the due day" a taxable rate of 8.5%, rather than 7%, is assessed.  In addition to any other penalties assessed under the New ATO, if a producer refuses or neglects to make any payment required under the New ATO, an additional $100, or 10%, whichever is greater, of the amount of the tax shall be collected.  (New ATO, §VIII.)

Section 8402(c)(2) provides in this regard as follows:

> (2) **Any municipality which <u>has on or before</u> December 31, 1997, levied, assessed[,] or collected** or provided for the levying, assessment[,] or collection of **an amusement or admissions tax** under [T]he Local Tax Enabling Act[5] **may continue to levy, assess**[,] **and collect the tax** on

---

[5] The Township's authority to levy an amusement tax under The Local Tax Enabling Act is not presently challenged herein.  Both the Former ATO and the New ATO are enacted pursuant to The Local Tax Enabling Act.  *See* Former ATO §301, New ATO §II.  We note that under The Local Tax Enabling Act, townships may, by ordinance, levy taxes within their limits.  Section 301.1 of The Local Tax Enabling Act, 53 P.S. §6924.301.1.  Amusement taxes are limited with respect to professional baseball, real property rented for camping, health, fitness, or exercise, bowling, and railroads.  53 P.S. §6924.301.1(f)(3), (13), (16), (17).  Moreover, The Local Tax Enabling Act limits the amount that amusements can be taxed at 10%.  Section 311(6) of The Local Tax Enabling Act, 53 P.S. §6924.311(6).

7

> such subjects upon which the tax was imposed by the municipality as of December 31, 1997, **at a rate not to exceed the effective rate as collected by the municipality as of December 31, 1997, or 5%, whichever is greater. A municipality <u>which did not</u> assess, levy[,] or collect an amusement or admissions tax as of December 31, 1997, may not assess, levy[,] or collect the tax at a rate higher than 5%**.

53 Pa.C.S. §8402(c)(2) (emphasis added). Rausch Creek argues that because the Township *repealed* rather than *amended* the Former ATO, the Township is now limited under Section 8402(c)(2) to levying a maximum tax of 5% of amusements. Rausch Creek cites to no authority nor does it indicate how the language of Section 8402(c)(2) operates differently if amusement taxes that existed as of December 31, 1997, were later *amended* rather than *repealed* and *replaced* with another amusement tax levying a different rate. The plain language of the statute indicates that this distinction is immaterial in determining the maximum amusement tax rate the Township can levy.

In general, tax statutes are to be strictly construed against the taxing authority. 1 Pa.C.S. §1928(b)(3).[6] The principles of the Statutory Construction Act of 1972 and statutory interpretation generally, are to be followed when construing local ordinances. *Reaman v. Allentown Power Center, L.P.*, 74 A.3d 371, 374 (Pa. Cmwlth. 2013) (citations omitted). Moreover, "[r]easonable doubts about the meaning of tax legislation are resolved in favor of the taxpayer. At the same time, an ordinance must be construed to give effect to all of its provisions." *Id.* (citations omitted). However, "'[s]trict construction does not require . . . that a statute be construed as narrowly as possible, or that it be construed so literally and without

---

[6] "All provisions of a statute of the classes hereafter enumerated shall be strictly construed: . . . Provisions imposing taxes." 1 Pa.C.S. §1928(b)(3).

8

common sense that its obvious intent is frustrated.'"  *Id.* (quoting *Peters v. Department of Forests and Waters,* 350 A.2d 812, 814-15 (Pa. 1976)).

Of course, the cardinal rule of all statutory construction is to ascertain and effectuate the intent of the Legislature.  *Harrisburg Area Community College v. Pennsylvania Human Relations Commission*, 245 A.3d 283, 291 (Pa. Cmwlth., 2020).  Our Supreme Court has explained:

> When engaging in statutory construction, a court's duty is to give effect to the legislature's intent and to give effect to all of a statute's provisions.  1 Pa.C.S. §1921(a).  The best indication of legislative intent is the plain language of the statute.  *Matter of Private Sale of Prop[erty] by Millcreek [Township School District]*, 185 A.3d 282, 290-91 ([Pa.] 2018). In ascertaining the plain meaning, we consider the statutory language in context and give words and phrases their "common and approved usage." *Commonwealth by Shapiro v. Golden Gate Nat*[*ional*] *Senior Care LLC*, []194 A.3d 1010, 1027 ([Pa.] 2018).  When statutory language is clear and unambiguous, courts must give effect to the words of the statute and must not disregard the text to implement its objective. *Id.*; 1 Pa.C.S. §1921(b). "Only if the statute is ambiguous, and not explicit, do we resort to other means of discerning legislative intent." *Millcreek [Township School District]* 185 A.3d at 291; 1 Pa.C.S. §1921(c).

*Crown Castle NG East, LLC v. Pennsylvania Public Utility Commission*, 234 A.3d 665, 674 (Pa. 2020).

Because the language of Section 8402(c)(2) is clear and unambiguous, we need only look to the plain language and need not resort to other means of discerning legislative intent.  The opening sentence of Section 8402(c)(2) clearly states that "any municipality ***which has on or before*** December 31, 1997[,] levied . . . an amusement tax under The Local Tax Enabling Act . . . may continue to levy . .

9

. the tax at **a rate not to exceed the effective rate as collected by the municipality as of December 31, 1997, or 5% whichever is greater**." 53 Pa.C.S. §8402(c)(2) (emphasis added). Contrary to Rausch Creek's assessment, whether the Former ATO was repealed or amended is immaterial under the plain language of Section 8402(c)(2). What matters for the applicability of Section 8402(c)(2) is that the Former ATO *__existed__* on or before December 31, 1997. If an ATO existed as of December 31, 1997, then the Township may continue to levy such a tax (1) at a rate that does not exceed the prior rate imposed as of December 31, 1997, or (2) at a rate of 5%, whichever is greater.

The pivotal point of our conclusion rests on the language "which has on or before December 31, 1997, levied." 53 Pa.C.S. §8402(c)(2). By this language, the statute only requires that a municipality have at one point levied an amusement tax on or before December 31, 1997. The usage of the word "has" is unmistakable. The word "has" does not differentiate between an amended amusement tax or a repealed one; it simply means that an amusement tax must have existed on or before December 31, 1997. A conclusion to the contrary would result in a perilous failure to ascertain the intent of the legislature based on the statute's plain language. It is undisputed that the Township levied an amusement tax on or before December 31, 1997, and the record supports this conclusion. *See* Former ATO, §303 ("a tax is imposed, for general revenue purposes, at the rate of 10% of the admission price to each amusement within the Township . . ."). The Former ATO was enacted on May 21, 1953, and was revised on July 10, 1995. *Id.* Notably, neither party has identified any case contrary to this construction.

As explained above, the statute itself does not require a different result if an amusement tax existing before December 31, 1997, was amended or repealed

10

and replaced, only that such a tax existed. However, we have examined the effect of an amendment. "The rules of statutory construction are applicable to statutes and ordinances alike." *In re Thompson*, 896 A.2d 659, 669 (Pa. Cmwlth. 2006). The rules of construction state:

> **Whenever a section or part of a statute is amended, the amendment shall be construed as merging into the original statute, become a part thereof, and <u>replace</u> the part amended**, and the remainder of the original statute and the amendment shall be read together and viewed as one statute passed at one time; but the portions of the statute which were not altered by the amendment shall be construed as effective from the time of their original enactment, and the new provisions shall be construed as effective only from the date when the amendment became effective.

1 Pa.C.S. §1953 (emphasis added). *See Holy Redeemer Health Systems v. Workers' Compensation Appeal Board (Figueroa)*, 245 A.3d 355, 360-61 (Pa. Cmwlth. 2020) ("Statutory amendments merge into the original statute and replace the part amended.").

The difference between an amendment and a repeal and replacement of an ordinance is of no moment in this case because as Section 1953 of the Statutory Construction Act indicates, an amendment's effect is to *replace* the part amended. When done properly, the repeal of a former ordinance and the replacement with a new ordinance obviously replaces the former ordinance. This is consistent with our conclusion above, which clearly states that if a municipality *had* levied an amusement tax on or before December 31, 1997, it may continue to do so at a rate not exceeding the rate it levied on or before December 31, 1997. Section 8402(c)(2) does not say that an amendment is required to continue to tax at or below the rate

taxed as of December 31, 1997, just that such a tax existed as of that date. "[A]lthough one is admonished to listen attentively to what a statute says; one must also listen attentively to what it does not say." *Thompson v. Thompson*, 223 A.3d 1272, 1277 (Pa. 2020).

The plain language also provides the maximum rate that can be charged under the New ATO. By Section 8402(c)(2)'s plain language, the amusement tax rate may not "exceed the effective rate as collected by the municipality as of December 31, 1997, or 5%, ***whichever is greater***." 53 Pa.C.S. §8402(c)(2). There can be no mistake: the effective rate of an amusement tax cannot exceed the rate collected by the municipality as of December 31, 1997, or 5%, whichever is greater. The Former ATO excised a tax rate of 10%. (Former ATO, §303.) Because the maximum rate that the Township could levy under the Former ATO was 10%, under Section 8402(c)(2), the New ATO's rate cannot exceed 10%, thus the New ATO's rate of 7% is permissible. Rausch Creek's interpretation that the maximum rate is 5% would only exist under two scenarios. First, as of December 31, 1997, the Township **did not** levy an amusement tax. Second, the Former ATO, which existed on or before December 31, 1997, levied a tax under 5%. Neither of these scenarios happened in this case.

Moreover, our conclusion is bolstered by additional language in Section 8402(c)(2), which provides that "[a] municipality **which did not** assess, levy or collect an amusement or admissions tax as of December 31, 1997, may not assess, levy or collect the tax at a rate higher than 5%." 53 Pa.C.S. §8402(c)(2). First, the language "which did not assess," explicitly supports the conclusion that an amusement tax must have **existed** on or before December 31, 1997. Again, this language does not differentiate between an ordinance that was amended or

12

repealed—the only thing that matters under Section 8402(c)(2) is that the Former ATO existed. Second, it could not be clearer from this language that if the Township, a municipality, did not levy an amusement tax as of December 31, 1997, it may not levy the tax at a rate greater than 5%.

Accordingly, because the Township levied an amusement tax as of December 31, 1997, at a rate of 10%, the plain language of Section 8402(c)(2) authorizes the Township to levy an amusement tax of 7%.

Accordingly, the trial court's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rausch Creek Off-Road Park, LLC,     :
            Appellant            :
                                    :    No. 550 C.D. 2020
            v.                 :
                                    :
Tremont Township, Schuylkill County   :

# ***ORDER***

AND NOW, this 21st day of September, 2021, the May 20, 2020 order of the Court of Common Pleas of Schuylkill County is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge