J. A16042/18

2019 PA Super 72

| | | |
|---|---|---|
| NANCY K. RAYNOR, ESQUIRE AND | : | IN THE SUPERIOR COURT OF |
| RAYNOR & ASSOCIATES, P.C., | : | PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| MATTHEW D'ANNUNZIO, ESQUIRE; | : | |
| KLEHR HARRISON HARVEY | : | |
| BRANZBURG LLP; | : | |
| WILLIAM T. HILL, ESQUIRE; | : | |
| MESSA & ASSOCIATES, P.C.; | : | |
| JOSEPH MESSA, JR., ESQUIRE AND | : | |
| ROSALIND W. SUTCH, AS EXECUTRIX | : | No. 3313 EDA 2017 |
| OF THE ESTATE OF ROSALIND WILSON,: | | |
| DECEASED | : | |

Appeal from the Order, August 29, 2017,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. 00211, January Term 2017

BEFORE:  BENDER, P.J.E., LAZARUS, J., AND FORD ELLIOTT, P.J.E.

OPINION BY FORD ELLIOTT, P.J.E.:              **FILED MARCH 08, 2019**

Nancy K. Raynor, Esq., and Raynor & Associates, P.C. (collectively, "appellants"), appeal from the August 29, 2017 order entered by the Court of Common Pleas of Philadelphia County sustaining preliminary objections filed by Matthew D'Annunzio, Esq.; Klehr Harrison Harvey Branzburg LLP; William T. Hill, Esq.; Messa & Associates, P.C.; Joseph Messa, Jr., Esq.; and Rosalind W. Sutch, as executrix of the Estate of Rosalind Wilson, deceased (collectively, "appellees"), and dismissing appellants' complaint with

prejudice. After careful review, we affirm in part, reverse in part, and remand for further proceedings.

The trial court provided the following synopsis of the relevant facts and procedural history:

This case evolves from the acrimonious relationship between opposing counsel in the matter of *Sutch v. Roxborough* [*Mem'l Hosp.*], *et al.*, July Term 2009 No. 901. In the underlying case, [appellants] served as defense counsel for Dr. Jeffrey Gellar and Roxborough Emergency Physician Associates. [Appellees] were the plaintiff's counsel and plaintiff, respectively, in the underlying action. The Superior Court described the facts underlying the instant case as a "contempt narrative [that] took on a life of its own . . . [in which Mr. Messa, and Mr. D'Annunzio] presented their conclusions with transparent venom, bloom, innuendo and increased outrage, refreshed periodically with personal attacks on Ms. Raynor." *Sutch v. Roxborough* [*Mem'l Hosp.*], 142 A.3d 38, 79 (Pa.Super. 2016).

According to the Complaint, [Ms.] Sutch, through her counsel[, Messrs.] D'Annnzio, Hill, and Messa, filed suit against *inter alia* Roxborough Memorial Hospital, Roxborough Emergency Physician Associates, and Dr. Jeffrey Gellar (collectively referred to as "Roxborough"), alleging Roxborough's failure to obtain a recommended CT scan during a May 3, 2007 emergency room visit resulted in a missed opportunity to diagnose and treat Decedent Rosaline [sic] Wilson's lung cancer. The *Sutch* trial commenced on May 21, 2012. As a result of a pre-trial ruling on a motion *in limine*, [Ms.] Raynor and Roxborough were precluded from presenting evidence or argument regarding Rosaline [sic] Wilson's history of smoking. At the start of the defense case, [Messrs.] Messa and D'Annunzio requested an order from the trial judge, the Honorable Paul Panepinto, directing [Ms.] Raynor to inform her witnesses of the ban on smoking

immediately before they took the stand. Judge Panepinto responded:

> [COURT]: Okay. Well, I don't have a response. They know the rules. So I assume – did you talk with them? Maybe you didn't bring that up this morning.

During the defense case-in-chief, [Ms.] Raynor asked Roxborough's expert, John J. Kelly, D.O., about Ms. Wilson's cardiac risk factors. Dr. Kelly's response included that she was a smoker. Outside of the presence of the jury, [Messrs.] Messa and D'Annunzio objected to Dr. Kelly's testimony because it mentioned Ms. Wilson's smoking history. Judge Panepinto conducted a colloquy of Dr. Kelly, who testified that he did not recall being instructed by [Ms.] Raynor about the pre-trial *in limine* ruling concerning smoking. Following Judge Panepinto's colloquy with Dr. Kelly, [Mr.] D'Annunzio argued [Ms.] Raynor should be held in contempt for disregarding direct, specific, instructions from the trial court that immediately before taking the stand, each witness should be instructed not to mention smoking. [Ms.] Raynor responded that she had instructed Dr. Kelly not to mention smoking, and her question was not intended to elicit testimony concerning smoking; rather the question was meant to elicit testimony concerning vascular disease and other issues with Ms. Wilson's carotid artery.

The following day, Judge Panepinto held an *in camera* conference concerning the reference to smoking. At the conference, [Mr.] Messa argued i) [Ms.] Raynor acted intentionally or recklessly in asking the question, ii) [Ms.] Raynor lied to the Court when she stated that she had informed Dr. Kelly about the preclusion of testimony related to smoking, and iii) the Court should grant a mistrial, or in the alternative, grant sanctions such as striking Dr. Kelly's testimony, striking Dr. Geller's entire defense, disqualifying [Ms.] Raynor as counsel, and/or providing a curative instruction. Judge Panepinto denied the request for a mistrial and chose to give a

curative instruction to the jury. On June 8, 2012, the jury returned a verdict in favor of [Ms.] Sutch for $190,000.

[Ms.] Sutch, through her counsel[, Messrs.] Messa and D'Annunzio, filed post-trial motions seeking a new trial due to Dr. Kelly's smoking reference, and, in the event Judge Panepinto granted the new trial, seeking sanctions against [Ms.] Raynor and her clients in the amount of [counsel] fees and costs incurred in preparing for and attending the original trial. Judge Panepinto granted the request for a new trial.

Trial court opinion, 8/29/17 at 1-4 (footnote and citations to the record omitted).

This court affirmed the trial court's order granting a new trial on November 4, 2013. *See Sutch v. Roxborough Mem'l Hosp.*, 91 A.3d 1273 (Pa.Super. 2013) (unpublished memorandum).

Subsequently, on March 11, 2014, the trial court ordered a hearing on [appellees'] motion for contempt/sanctions, limited to issues concerning whether sanctions should be imposed. The order stated, "Any evidence with regard to the type of sanctions to be imposed, monetary or otherwise will be held under advisement pending the scheduling of a subsequent hearing if necessary." (*See* Trial Court Order, filed March 11, 2014, at 1[].) On March 14, 2014, Ms. Raynor filed a motion to determine the nature of the sanctions sought by [appellees. Appellees] responded and specified costs and fees under 42 Pa.C.S.A. § 2503(7) for dilatory, obdurate, or vexatious conduct; civil contempt; and direct criminal contempt.

*Sutch v. Roxborough Mem'l Hosp.*, 142 A.3d 38, 55 (Pa.Super. 2016) (citation omitted). Prior to the hearing, the trial court indicated that it would

not take up the matter as a criminal proceeding for criminal contempt. *Id.* at 56.

> On March 27, 2014 and March 31, 2014, Judge Panepinto conducted hearings on whether [Ms.] Raynor should be held in contempt or sanctioned; at those hearings, [Messrs.] Messa and D'Annunzio presented only the notes of testimony from the first *Sutch* trial. According to [appellants, Messrs.] Messa and D'Annunzio improperly argued, both in briefing and at oral argument, that [Ms.] Raynor deliberately violated an order requiring her to inform all of her witnesses of the ban on discussing [Ms.] Wilson's history of smoking immediately before those witnesses took the stand even though the only order that existed was the order excluding references to smoking. Judge Panepinto issued an Order dated May 2, 2014, and docketed May 5, 2014, that sanctions shall be imposed upon [Ms.] Raynor. [Messrs.] Messa and D'Annunzio, together with their respective firms, filed a brief requesting a total of $1,349,063.67 in sanctions. [Appellants] filed a response, challenging the requested amounts. Without holding an additional hearing as to the amount of the sanction, Judge Panepinto issued an order docketed on November 4, 2014 sanctioning [appellants] in the amount of $946,195.16, divided as follows: $615,349.50 to Klehr Harrison, $160,612.50 to the Messa Firm, and $170,235.16 to [Ms.] Sutch. [Appellants] filed an appeal to the Superior Court.
>
> On January 8, 2015, while the appeal to the Superior Court was pending, [Messrs.] Messa and D'Annunzio entered judgment on Judge Panepinto's November 4, 2014 Order and the next day issued writs of attachment, executions in attachment, and summons upon various garnishees, which had the effect of freezing [Ms.] Raynor's personal and law firm bank accounts and placing a lien upon [Ms.] Raynor's home. The Superior Court, by Order dated February 18, 2015, stayed all existing execution and garnishment actions, as well as any future proceedings in the case,

thereby permitting [appellants] access to their bank accounts. By Opinion dated June 15, 2016, the Superior Court reversed Judge Panepinto's Orders of May 2, 2014 and November 4, 2014, thereby vacating all sanctions and judgments taken thereon. According to the Complaint, the Superior Court's central holdings were 1) [Ms.] Raynor could not have intentionally violated Judge Panepinto's order to instruct every witness of the prohibition on mentioning smoking immediately before the witness took the stand because no such order existed, and 2) no evidence of record existed to prove that [Ms.] Raynor colluded with Dr. Kelly in an effort to flout the *in limine* ruling barring testimony about smoking. The Supreme Court denied the Petition for Allowance of Appeal.[1]

[Appellants] commenced the instant case by Writ of Summons on January 3, 2017. The Complaint, filed April 6, 2017, sounds in 1) violation of the Dragonetti Act,[2] 2) common law wrongful use of civil proceedings, and 3) abuse of process. The crux of the Complaint is [appellees] knew their requests for sanctions and contempt were wholly unsupported by facts and law, yet they nevertheless pursued sanctions and contempt for the vindictive purpose of destroying [Ms.] Raynor's professional livelihood and personal life.

[Mr.] D'Annunzio, Klehr Harrison Harvey Branzburg LLP, [Mr.] Hill, []and [Ms.] Sutch [] (collectively, "the D'Annunzio [appellees]") filed Preliminary Objections arguing 1) [Ms.] Sutch was improperly added as a party because she was named in the Complaint but not the Writ of Summons, 2) demurrer to all claims against [Ms.] Sutch because there are no allegations of any actions taken by [Ms.] Sutch, 3) [appellants] lack standing to bring a Dragonetti claim because they were not a party to the underlying action, 4) demurrer to the Dragonetti claim because moving for sanctions or contempt does not constitute "procurement,

---

[1] **Sutch v. Roxborough Mem'l Hosp.**, 163 A.3d 399 (Pa. 2016).

[2] 42 Pa.C.S.A. §§ 8351-8354.

initiation or continuation of civil proceedings" within the meaning of the Dragonetti Act, 5) demurrer to the Dragonetti claim because Judge Panepinto's Order of May 2, 2014 established that probable cause existed to seek sanctions and/or contempt, 6) public policy prohibits a Dragonetti claim based on the pursuit of sanctions and/or contempt, 7) demurrer to the common law wrongful use of civil proceedings claim because such a claim has been subsumed by the Dragonetti Act, 8) demurrer to the abuse of process claim because it is barred by the statute of limitations, 9) demurrer to the abuse of process claim because there is no perversion of the legal process by pursuing the request for sanctions and/or contempt, and 10) paragraph 111 should be stricken as scandalous and impertinent.

[] Messa & Associates, P.C. and [Mr.] Messa (collectively "the Messa [appellees]") filed Preliminary Objections arguing 1) [appellants] lack standing to bring a Dragonetti claim because they were not a party to the underlying action, 2) demurrer to the Dragonetti claim because moving for sanctions or contempt does not constitute "procurement, initiation or continuation of civil proceedings" within the meaning of the Dragonetti Act, 3) demurrer to the Dragonetti claim because probable cause existed to seek sanctions and/or contempt, 4) demurrer to the common law wrongful use of civil proceedings claim because such a claim has been subsumed by the Dragonetti Act, 5) demurrer to the abuse of process claim because it is barred by the statute of limitations, and 6) demurrer to the abuse of process claim because there is no perversion of the legal process by pursuing the request for sanctions and/or contempt.

[Appellants] filed Responses in Opposition to both sets of Preliminary Objections. Additionally, [appellants] filed Preliminary Objections to the Messa [appellees'] Preliminary Objections and Preliminary Objections to the D'Annunzio [appellees'] Preliminary Objections in which they argue the preliminary objection to the abuse of process claim based on the statute of limitations should be stricken because the statute of

> limitation[s], an affirmative defense, cannot be raised by preliminary objection. The Messa [appellees] and the D'Annunzio [appellees], respectfully, opposed [appellants'] Preliminary Objections to their Preliminary Objections.

Trial court opinion, 8/29/17 at 4-7 (footnotes and citations to the record omitted).

On August 29, 2017, the trial court sustained appellees' preliminary objections and dismissed appellants' complaint with prejudice. Appellants filed a notice of appeal to this court on September 27, 2017. The trial court did not order appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Pursuant to Pa.R.A.P. 1925(a), the trial court filed an opinion, in which it incorporated the contents of its opinion and order dated August 29, 2017.

Appellants raise the following issues for our review:

1. Is the term "civil proceedings," as used in Section 8351(a) of the Dragonetti Act, sufficiently broad to encompass the wrongful use of a civil proceeding other than an entire lawsuit, *i.e.*, something other than a civil action complaint?

2. Did [appellants], as the parties against whom a wrongful civil proceeding was initiated, procured, and continued, have standing to bring a claim under the Dragonetti Act?

3. May two claims that are mutually exclusive be properly maintained, when they are plainly pled in the alternative and a legal challenge to one of the mutually exclusive claims is predicted to occur in the appellate courts, where the [appellants] asserting the two mutually

exclusive claims intend only to rely on the second claim if the legal challenge to the first results in the unavailability of the first claim in [appellants'] case?

4. Did [appellants] sufficiently plead their abuse of process claim by alleging that [appellees] used a civil process primarily to accomplish a purpose that was improper, not legitimate, and/or not the purpose for which the process was designed?

Appellants' brief at 6-7.

Appellants appeal from an order sustaining preliminary objections.

Accordingly, we are governed by the following standard:

[O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Richmond v. McHale*, 35 A.3d 779, 783 (Pa.Super. 2012), quoting

*Wayne M. Chiurazzi Law Inc. v. MRO Corp.*, 27 A.3d 1272, 1277

(Pa.Super. 2011), **rev'd on other grounds**, 97 A.3d 275 (Pa. 2014) (citations omitted).

## I.

First, appellants argue that the trial court erred when it held that a "civil proceeding" for the purposes of a cause of action pursuant to the Dragonetti Act does not encompass contempt proceedings. (Appellants' brief at 25.) Specifically, appellants aver that there is no "**per se** rule that Dragonetti claims can never be based on the 'procurement, initiation or continuation' of something less than an entire civil action." (**Id.** at 32-33 (emphasis omitted).) The trial court concluded that "[r]equesting sanctions and/or finding of contempt as part of a post-trial motion does not constitute the 'procurement, initiation, or continuation of civil proceedings' under the Dragonetti Act because the request for sanctions, made in a post-trial motion, was not an action." (Trial court opinion, 8/29/17 at 15.)

In short, the question before this court is whether "civil proceedings" as contemplated by the Dragonetti Act include the initiation of contempt proceedings and accompanying requests for sanctions. Appellants rely on both *Black's Law Dictionary* and the Judiciary Code to argue that a "proceeding" is defined "not only as a complete remedy, but also as a mere procedural step that is part of a larger action or special proceeding." (Appellants' brief at 30, citing *Black's Law Dictionary*, 2155 (8th ed. 2004).) Appellants also cite to Section 102 of the Judiciary Code, which defines

"proceedings" to "include[] every declaration, petition, or other application which may be made to a court under law or usage under special statutory authority, but the term does not include an action or an appeal." (Appellants' brief at 30 n.7, quoting 42 Pa.C.S.A. § 102.) "Action" is defined as "any action at law or in equity." 42 Pa.C.S.A. § 102. The statute also provides that the aforementioned definitions set forth in the Judiciary Code shall apply "unless the context clearly indicates otherwise." *Id.*

Appellees, however, take the position that a civil proceeding can only encompass the initiation of "a lawsuit with malicious motive and lacking probable cause." (D'Annunzio appellees' brief at 22, quoting ***Werner v. Plater-Zyberk***, 799 A.2d 776, 792 (Pa.Super. 2002) (citations omitted).) Appellees further argue that applying the definition of "proceeding" as found in the Judiciary Code would produce an illogical and unworkable result which would run afoul of the presumption in ascertaining legislative intent set forth in 1 Pa.C.S.A. § 1922(1) (stating that "the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable). (D'Annunzio appellees' brief at 29-30; Messa appellees' brief at 18.)

The trial court agreed with appellees, finding that appellants' proposed definition of "proceeding" was unworkable and would lead to an illogical result when applied and, therefore, must fail. The trial court further noted under appellants' proposed definition,

> while useful for their position in the case ***sub judice***, conflicts with the binding precedent of th[e]

- 11 -

Commonwealth's appellate courts. ***See***, ***e.g.***, ***Bannar v. Miller***, 701 A.2d 242 (Pa.Super. 1997) (finding sufficient evidence existed to support the jury's finding that the defendants had filed the underlying lawsuit against the plaintiff for an improper purpose). While [appellants'] reliance on Section 102's definition of proceedings is creative, it is clear, in the context of the case ***sub judice***, the broad definition of "proceeding" contained within Section 102 cannot be utilized.

Trial court opinion, 8/29/17 at 12-13. Further, the trial court noted that under appellants' proposed definition of "proceeding," "the Dragonetti Act would not apply to a lawsuit because 'actions' are specifically excluded from the definition of 'proceedings.'" (***Id.*** at 12.)

The trial court found that:

a review of the text of the Dragonetti Act, the binding precedent from the appellate courts, and the common law upon which the Dragonetti Act is based, supports the conclusion [that] the phrase "procurement, initiation, or continuation of civil proceedings" means the filing of a civil action, and not including a request for sanctions in a post-trial motion.

***Id.*** at 14.

The Dragonetti Act created the following cause of action:

**(a)** **Elements of action.--**A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or

- 12 -

> adjudication of the claim in which the proceedings are based; and
>
> (2) the proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S.A. § 8351(a).

For the following reasons, we find that the trial court committed an error of law, and we further find that a contempt proceeding in this case following the remand of the record by this court does represent a "procurement, initiation, or continuation of civil proceedings" as contemplated by the Dragonetti Act.

The purpose of a civil lawsuit is so that an injured party may be compensated and/or made whole by the party legally responsible for damages and/or injuries. *See*, *e.g.*, ***Solarchick ex rel. Solarchick v. Metro. Life Ins. Co.***, 430 F. Supp. 2d 511, 516 (W.D.Pa. 2006) (applying Pennsylvania law). Further, Section 2503 of the Judiciary Code entitles a participant to attorneys' fees for dilatory, obdurate, or vexatious conduct. ***See*** 42 Pa.C.S.A. § 2503(7). In that regard, both a civil lawsuit and a motion for contempt requesting sanctions under Section 2503(7) put an individual's basic fundamental right of property in legal jeopardy. Indeed, a civil contempt proceeding, similar to a civil lawsuit, places the burden of proof on the complaining party to establish, by a preponderance of the evidence, that the defendant is in noncompliance with a court order. ***MacDougall v. MacDougall***, 49 A.3d 890, 892 (Pa.Super. 2012), ***appeal denied***, 75 A.3d

1282 (Pa. 2013), citing **Lachat v. Hinchcliffe**, 769 A.2d 481, 489 (Pa.Super. 2001). Much like in a civil lawsuit, before holding an individual in civil contempt, "the court must undertake (1) a rule to show cause; (2) an answer and hearing; (3) a rule absolute; (4) a hearing on the contempt citation; and (5) an adjudication of contempt." **Lachat**, 769 A.2d at 489, citing **McMahon v. McMahon**, 706 A.2d 350, 356 (Pa.Super. 1998).

Here, appellees, initially in a post-trial motion,[3] sought a finding of contempt against appellants and requested $1,349,063.67 in attorneys' fees and costs. The trial court first granted appellees' motion for a new trial, which we affirmed on November 4, 2013. **See Sutch**, 91 A.3d 1273 (unpublished memorandum). Following the remand of the record by this court, the trial court noted "that [appellees were] proceeding against Ms. Raynor in civil contempt for compensatory damages **and** under 42 Pa.C.S.A. § 2503(7) (counsel fees as a sanction for dilatory, vexatious, and obdurate behavior)." **Sutch**, 142 A.3d at 56 (emphasis in original). The trial court subsequently held a hearing on March 27, 2014 and March 31, 2014, in order to determine whether Ms. Raynor was in civil contempt and/or was subject to sanctions. The trial court ultimately sanctioned appellants a total of $946,195.16. We find that a motion seeking a finding of contempt and a request for sanctions

---

[3] In the post-trial motion, appellees, on behalf of the plaintiff in the underlying medical malpractice litigation, also "requested a new trial because (1) the [trial] court erred in denying [p]laintiff's motion for a mistrial based on Dr. Kelly's violation of the smoking preclusion order and/or (2) the 'grossly inadequate verdict'" of $190,000. **Sutch**, 142 A.3d at 53.

is, separate and distinct from post-trial motions alleging trial court error filed in the underlying lawsuit for the purposes of the Dragonetti Act, tantamount to the filing of a civil lawsuit. In a fashion similar to a civil lawsuit, the parties exchanged pleadings, and the trial court held a hearing, issued an adjudication of contempt, and imposed sanctions.

Accordingly, we find that seeking an adjudication of contempt and requesting sanctions constitutes the procurement, initiation, or continuation of civil proceedings as contemplated by the Dragonetti Act. Therefore, the trial court committed an error of law, and we reverse. While we make no determination as to whether appellants will be successful on the merits, they are entitled to their day in court.

## II.

In their second issue on appeal, appellants contend that the trial court erred when it determined that appellants did not have standing to bring a cause of action under the Dragonetti Act because they were not parties to the underlying civil action. (Appellants' brief at 36.)

Indeed, we have previously stated that a cause of action under the Dragonetti Act "cannot be maintained by one who is not an original party to the underlying action." *Hart v. O'Malley*, 647 A.2d 542, 549 (Pa.Super. 1994), *affirmed*, 676 A.2d 222 (Pa. 1996). It is of no import, however, that appellants were not original parties to the underlying medical malpractice lawsuit that gave rise to the request for a finding of contempt and sanctions.

As discussed in detail above, appellants have established that they brought forward a viable cause of action pursuant to the Dragonetti Act. Because appellants were the defendants in the contempt proceedings that give rise to the Dragonetti cause of action presently before us and were the parties against whom sanctions were imposed, we find that appellants have standing.

**III.**

Appellants next contend that the trial court erred when it sustained the preliminary objections in the form of a demurrer to the common law wrongful use of civil proceedings brought forward in appellants' complaint. In its opinion, the trial court concluded that "until the appellate courts hold the Dragonetti Act is unconstitutional or does not subsume the common law tort of wrongful use of civil proceedings, the common law tort of wrongful use of civil proceedings is not a viable cause of action in this Commonwealth." (Trial court opinion, 8/29/17 at 9.)

At the time appellants filed their complaint, a constitutional challenge to the Dragonetti Act was pending before our supreme court. *See Villani v. Seibert*, 159 A.3d 478 (Pa. 2017). The Supreme Court of Pennsylvania ultimately held that the Dragonetti Act is constitutional and that attorneys may be found liable for wrongful use of civil proceedings claims. *Id.* at 492. Specifically, our supreme court concluded that the Dragonetti Act did not infringe upon the Supreme Court of Pennsylvania's constitutionally prescribed power to regulate the practice of law within the Commonwealth, insofar as

such wrongful use of civil proceedings actions may be advanced against attorneys. *Id.* at 492-493. As the trial court stated, appellants' "inclusion of the common law wrongful use of civil proceedings claim was a reasonable precautionary measure in light of the possibility the **Villani** court may [have held] the Dragonetti Act unconstitutional." (Trial court opinion, 8/29/17 at 8.)

The trial court, however, concluded that because our supreme court held the Dragonetti Act to be constitutional, and because appellants failed to identify any other cases currently pending before our supreme court challenging the constitutionality of the Dragonetti Act, the preliminary objections to their common law wrongful use of civil proceedings claim must be sustained. Because our supreme court held that the Dragonetti Act is constitutional as to attorneys, it is not necessary to address the third issue on appeal on its merits, as the Dragonetti Act subsumes any common law wrongful use of civil proceedings claim.

**IV.**

Finally, appellants claim that the trial court erred when it sustained appellees' preliminary objections in the nature of a demurrer to Count III of their complaint, which alleged abuse of process.

Appellants contend that the trial court erred in granting appellees' preliminary objections in the nature of a demurrer to their abuse of process claim because their complaint sufficiently alleged an abuse of process cause of action, as it properly included allegations that appellees used the contempt

proceeding for the improper purposes of (1) harassing, embarrassing, and damaging appellants' reputation; and (2) collecting attorneys' fees to which they were not entitled in light of the contingent-fee agreement that appellees entered into with the plaintiff in the underlying medical malpractice action, which caused appellants harm. (Appellants' brief at 44.)

> The common law cause of action for abuse of process "is defined as the use of legal process against another 'primarily to accomplish a purpose for which it is not designed.'" ***Rosen v. American Bank of Rolla***, [] 627 A.2d 190, 192 (Pa.Super. 1993) (citation omitted).
>
>> To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff.
>>
>> Abuse of process is, in essence, the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process. Thus, the gravamen of this tort is the perversion of legal process to benefit someone in achieving a purpose which is not an authorized goal of the procedure in question.
>
> ***Werner***[, 799 A.2d at 785] (citations omitted). ***See Weiss v. Equibank***, [] 460 A.2d 271, 276 ([Pa.Super.] 1983) ("If the plaintiff sues the defendant on a valid cause of action but brings the suit, for example, not to collect his just debt but for a collateral purpose such as blackmail the action is a malicious abuse of process.").

***P.J.A. v. H.C.N.***, 156 A.3d 284, 288 (Pa.Super. 2017).

Appellants first claim that appellees initiated contempt proceedings for the improper purpose of causing personal and professional harm. (**See** appellants' brief at 44.) In support, appellants point out that when this court considered their appeal of the underlying contempt and sanctions order, we noted that "[e]ach time [the attorney appellees] brought the contempt issue before the [trial] court, they presumed what they were initially required to prove and presented their conclusions with transparent venom, bloom, innuendo and increased outrage, refreshed periodically with personal attacks on Ms. Raynor." (Appellant's brief at 21, 44) (some brackets in original) quoting **Sutch**, 142 A.3d at 79.

Our cases, however, hold that a defendant cannot be held liable for abuse of process when the defendant "has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." **Shaffer v. Stewart**, 473 A.2d 1017, 1019 (Pa.Super. 1984), quoting **Di Sante v. Russ Fin. Co.**, 380 A.2d 439, 441 (Pa.Super. 1977) (citation omitted); **see also Hart**, 647 A.2d at 552 (collecting cases). Indeed, the trial court noted that even if a plaintiff in an abuse of process cause of action can establish that a defendant was "consumed with hatred for [plaintiff], and that [defendant] thought of little else through his waking hours, he still has not created a genuine issue as to whether the primary purpose of the suit was anything other than [carrying the process to its authorized conclusion.]" (Trial

court opinion, 8/29/17 at 18-19, citing **Rosen v. Tabby**, 1997 WL 667147 (E.D.Pa. 1997) (applying Pennsylvania law).)

Appellants next claim that appellees initiated the contempt proceeding for the improper purpose of collecting attorneys' fees to which they would not have otherwise been entitled due to the contingent-fee agreement they entered into with the plaintiff below. (Appellants' brief at 44, 47.) This argument is a red herring of sorts because it tends to divert attention from the stated purpose of the contempt proceedings, which was to recover compensatory damages. **Sutch**, 142 A.3d at 56. "Compensatory damages are 'damages awarded to a person as compensation, indemnity or restitution for harm sustained by him.'" **Colodonato v. Consol. Rail Corp.**, 470 A.2d 475, 479 (Pa. 1983), quoting Restatement (Second) of Torts, § 903 (1979). The fact that appellees entered into a contingent-fee agreement with plaintiff below has no bearing on the compensatory damages they sought to recover in the contempt proceeding, which would include costs associated with having to re-try a lengthy and complex medical malpractice case, the first trial of which spanned 19 days.[4]

Therefore, the trial court did not commit an error of law when it granted appellees' preliminary objections in the nature of a demurrer to Count III of appellants' complaint.

---

[4] The first trial began on May 21, 2012 and ended on June 8, 2012. **See Sutch**, 142 A.3d at 45, 53.

Order affirmed in part and reversed in part. Remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/8/19