# [J-53A-2020 and J-53B-2020]
# IN THE SUPREME COURT OF PENNSYLVANIA
# EASTERN DISTRICT

## SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.

| | | |
|---|---|---|
| NANCY K. RAYNOR, ESQUIRE AND RAYNOR & ASSOCIATES, P.C. | : | No. 35 EAP 2019 |
| | : | |
| | : | Appeal from the Judgment of |
| | : | Superior Court entered on March 8, |
| v. | : | 2019 at No. 3313 EDA 2017 |
| | : | (reargument denied May 14, 2019) |
| | : | affirming, reversing and remanding |
| MATTHEW D'ANNUNZIO, ESQUIRE; | : | the Order entered on August 29, |
| KLEHR HARRISON HARVEY | : | 2017 in the Court of Common Pleas, |
| BRANZBURG LLP; WILLIAM T. HILL, | : | Philadelphia County, Civil Division at |
| ESQUIRE; MESSA & ASSOCIATES, P.C.; | : | No. 0211 January Term, 2017. |
| JOSEPH MESSA, JR., ESQUIRE AND | : | |
| ROSALIND W. SUTCH, AS EXECUTRIX | : | ARGUED:  May 27, 2020 |
| OF THE ESTATE OF ROSALIND WILSON, | : | |
| DECEASED | : | |
| | : | |
| | : | |
| APPEAL OF:  MESSA & ASSOCIATES, | : | |
| P.C. & JOSEPH MESSA, JR., ESQUIRE | : | |
| | | |
| NANCY K. RAYNOR, ESQUIRE AND RAYNOR & ASSOCIATES, P.C. | : | No. 36 EAP 2019 |
| | : | |
| | : | Appeal from the Judgment of |
| | : | Superior Court entered on March 8, |
| v. | : | 2019 at No. 3313 EDA 2017 |
| | : | (reargument denied May 14, 2019) |
| | : | affirming, reversing and remanding |
| MATTHEW D'ANNUNZIO, ESQUIRE; | : | the Order entered on August 29, |
| KLEHR HARRISON HARVEY | : | 2017 in the Court of Common Pleas, |
| BRANZBURG LLP; WILLIAM T. HILL, | : | Philadelphia County, Civil Division at |
| ESQUIRE; MESSA & ASSOCIATES, P.C.; | : | No. 0211 January Term, 2017. |
| JOSEPH MESSA, JR., ESQUIRE AND | : | |
| ROSALIND W. SUTCH, AS EXECUTRIX | : | ARGUED:  May 27, 2020 |
| OF THE ESTATE OF ROSALIND WILSON, | : | |
| DECEASED | : | |
| | : | |
| | : | |
| | : | |
| | : | |

APPEAL OF:  MATTHEW D'ANNUNZIO,       :
ESQUIRE, KLEHR HARRISON HARVEY        :
BRANZBURG LLP, WILLIAM T. HILL,       :
ESQUIRE, AND ROSALIND W. SUTCH, AS    :
EXECUTRIX OF THE ESTATE OF            :
ROSALIND WILSON, DECEASED

## OPINION

**JUSTICE DOUGHERTY**                    **DECIDED:  December 22, 2020**

In these consolidated appeals we examine whether the Superior Court properly

determined a request for contempt sanctions against opposing counsel raised in a post-

trial motion in a lawsuit where neither counsel was a named party, constitutes actionable

"civil proceedings" under the Dragonetti Act, 42 Pa.C.S. §§8351-8354 (the "Dragonetti

Act" or the "Act").[1]  For the reasons set forth herein, we conclude the Superior Court erred

and reverse.

### I.  The underlying medical malpractice action

The present appeal arises from a medical malpractice action in which appellees

Nancy K. Raynor, Esq. and Raynor and Associates served as defense counsel for Dr.

---

[1] The Dragonetti Act, Act of Dec. 19, 1980, P.L. 1296, No. 232, §1 (codified at 42 Pa.C.S. §§8351-8354)  provides, in relevant part:

**§ 8351. Wrongful use of civil proceedings.**

**(a) Elements of action**. — A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) the proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S. §8351.

Jeffrey Gellar and Roxborough Emergency Physician Associates (collectively Roxborough). Appellants are the plaintiff in the underlying medical malpractice action, Rosalind W. Sutch, executrix of the estate of Rosalind Wilson (decedent), and her counsel in that lawsuit, Matthew D'Annunzio, Esq., Klehr, Harrison Harvey Branzburg, LLP, William T. Hill, Esq. (collectively, the D'Annunzio appellants) and Messa & Associates, P.C., and Joseph Messa, Jr., Esq. (collectively, the Messa appellants).

In July 2009, Sutch, by and through her counsel, the Messa appellants, filed the medical malpractice action alleging, *inter alia*, Roxborough failed to obtain a CT scan and timely diagnose decedent's lung cancer. The trial court granted Sutch's pre-trial motion *in limine*, and by order dated May 16, 2012, defendants were precluded "from presenting any evidence, testimony, and/or argument regarding decedent's smoking history" at trial. *Sutch v. Roxborough Mem'l Hosp.*, 142 A.3d 38, 45 (Pa. Super. 2016), *appeal denied*, 163 A.3d 399 (Pa. 2016). During trial, Sutch's counsel requested an order from the trial judge directing Raynor to inform defense witnesses of the ban on testimony regarding decedent's smoking history before the witnesses took the stand. The trial judge replied: "Okay. Well, I don't have a response. They know the rules. So I assume — did you talk with them? Maybe you didn't bring that up this morning." *Id.* The court did not issue the requested order specifically directing Raynor to inform her witnesses of the ban on discussing decedent's smoking history before they took the stand. *Id.*

On the following day of trial, Raynor questioned the defense's expert witness John J. Kelly, D.O., regarding decedent's treatment by Roxborough. In response to Raynor's question regarding decedent's cardiac risk factors, Kelly stated decedent was a smoker, was hypertensive and had vascular disease. *Id.* at 47. After Raynor posed several additional questions to Kelly, Sutch's counsel, D'Annunzio, objected to the testimony, and outside the presence of the jury, argued, *inter alia,* Raynor should be held in contempt for

her questioning and failure to comply with the pre-trial preclusion order. Raynor replied she had instructed Kelly not to mention decedent's smoking history, and her question regarding decedent's cardiac risk factors was intended to elicit testimony regarding vascular disease, not smoking. *Id.* at 49. Kelly testified he did not "remember any discussion . . . at all[,]" with Raynor regarding the pre-trial *in limine* ruling prohibiting testimony related to decedent's smoking, and when asked whether he had a discussion with Raynor that day prior to testifying, he answered "I did have some brief discussion with Ms. Raynor today, but not regarding smoking, no." *Id.* at 48; N.T., 5/31/12 at 112-13.

Plaintiff's counsel Messa asked for a mistrial and/or sanctions against the defense, asserting Raynor acted recklessly, at a minimum, if not intentionally, in asking Kelly about decedent's cardiac risk factors and then lied to the court by stating she informed Kelly about the ban on testimony related to decedent's smoking history. *Sutch*, 142 A.3d at 50. The trial judge denied the request for a mistrial and instead provided a curative instruction to the jury. *Id.* at 52. The trial judge informed Raynor, however, that "sanctions [are] something I have to consider." *Id.* at 50; N.T., 5/31/12 at 120. At the end of trial, the jury returned a verdict in favor of Sutch and awarded her $190,000. *Sutch*, 142 A.3d at 53. Appellants filed post-trial motions seeking a new trial as well as an order holding Raynor in contempt and awarding sanctions in the aggregate amount of counsel fees and costs for the first trial ($1,349,063.67). The court granted the motion for a new trial.[2]

---

[2] In an unrelated proceeding, Ms. Raynor was disqualified from participating as counsel in the second trial and ordered to pay $44,693.25 in counsel fees to decedent's estate, a decision affirmed by the Superior Court. *Sutch v. Roxborough Mem'l Hosp.*, 151 A.3d 241, 257, 261 (Pa. Super. 2016), *appeal denied* 169 A.3d 1065 (Pa. 2017). At the second trial, in the absence of references to decedent's smoking history, the jury awarded damages to plaintiff in the amount of $1,975,713.00. *Id.* at 248.

The trial court thereafter also conducted two days of hearings on the motion for contempt/sanctions.[3] The court found Raynor to be in civil contempt and issued an order for sanctions in the amount of $946,195.16 to be divided among appellants as follows: $615,349.50 to D'Annunzio's law firm, Klehr Harrison Harvey Branzburg, LLP; $160,612.50 to the Messa firm; and $170,235.16 to Sutch. *Sutch*, 142 A.3d at 62. Raynor and her firm filed an appeal to the Superior Court, and while the appeal was pending, appellants entered judgment on the order for sanctions and issued writs of attachment, executions in attachment and summonses upon various garnishees which effectively froze Raynor's personal and business bank accounts and placed a lien on her home. Pursuant to a properly filed petition, the Superior Court stayed all existing orders of execution and garnishment and any other future proceedings in the case. *Sutch*, 142 A.3d at 62-63. Ultimately, the Superior Court reversed the contempt order and vacated the sanctions imposed and the judgments taken to enforce the sanctions. *Id.* at 43, 79. Thereafter, Raynor and her firm commenced the current Dragonetti action against appellants.

## II. The Dragonetti Action

### A. Trial Court

The complaint filed by Raynor and her firm included three counts: 1) violation of the Dragonetti Act; 2) common law wrongful use of civil proceedings, and; 3) abuse of process. *Raynor v. D'Annunzio*, 205 A.3d 1252, 1257 (Pa. Super. 2019). The complaint asserted the Superior Court's central holdings in *Sutch*, 142 A.3d 38, "were 1) Raynor could not have intentionally violated [the trial court's] order to instruct every witness of the prohibition on mentioning smoking immediately before the witness took the stand

_____

[3] In its order granting the new trial, the court deferred ruling on the companion contempt/sanctions motion; those proceedings took place on March 27 and 31, 2014. *Sutch v. Roxborough Mem'l Hosp.*, 91 A.3d 1273 (Pa. Super. 2013) (unpublished memorandum); *Sutch v. Roxborough Mem'l Hospital*, 142 A.3d 38 (Pa. Super. 2016).

because no such order existed, and 2) no evidence of record existed to prove that Raynor colluded with Dr. Kelly in an effort to flout the *in limine* ruling barring testimony about smoking." *Raynor*, 205 A.3d at 1257, *quoting* Trial Court Op., 8/29/17 at 5. "The crux of the Complaint is [appellants] knew their requests for sanctions and contempt were wholly unsupported by facts and law, yet they nevertheless pursued sanctions and contempt for the vindictive purpose of destroying Raynor's professional livelihood and personal life." *Id., quoting* Trial Court Op., 8/29/17, at 6.

The D'Annunzio and Messa appellants filed nearly identical preliminary objections to the complaint, asserting, as relevant here: (1) Raynor and her firm lacked standing to bring a Dragonetti claim because they were not a party to the underlying medical malpractice action; (2) demurrer to the Dragonetti claim because moving for sanctions or contempt does not constitute procurement, initiation or continuation of civil proceedings within the meaning of the Dragonetti Act; (3) demurrer to the Dragonetti claim because probable cause existed to pursue contempt and sanctions post-trial; (4) public policy prohibits a Dragonetti claim to be based solely on the pursuit of contempt and sanctions; (5) demurrer to the wrongful use of civil proceedings claim because such a claim has been subsumed by the Dragonetti Act; and (6) demurrer to the abuse of process claim on statute of limitations grounds and because there is no perversion of the legal process by pursuing a motion for contempt or sanctions. *Id.* at 1258, *citing* Trial Court Op., 8/29/17 at 6-7.

The trial court sustained all preliminary objections and dismissed the Dragonetti complaint with prejudice. With respect to the wrongful use of civil proceedings claim, the court noted "the Dragonetti Act is a constitutional statute that subsumes the common law tort of wrongful use of civil proceedings." Trial Court Op., 8/29/17 at 9, *citing Matter of Larsen*, 616 A.2d 529, 587 (Pa. 1992) ("[t]he common law tort of malicious prosecution

has been codified and modified as a statutory cause of action") *and Villani v. Seibert*, 159 A.3d 478, 491-93 (Pa. 2017) (Dragonetti Act is not an unconstitutional infringement by legislature on judiciary's power to regulate attorney conduct).  The court also dismissed the abuse of process claim, finding appellants' post-trial motion which requested, in part, sanctions and/or contempt, was a legitimate use of process.  Trial Court Op., 8/29/17 at 15-19 ("Essentially, abuse of process is the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process."), *citing*, *inter alia*, *McGee v. Feege*, 535 A.2d 1020, 1026 (Pa. 1987); *Shaffer v. Stewart*, 473 A.2d 1017, 1019 (Pa. Super. 1984) ("there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions").

With respect to the claim alleging a violation of the Dragonetti Act, the court first noted the statute requires a person to take part in the "procurement, initiation or continuation of civil proceedings."  Trial Court Op., 8/29/17 at 11.  The court observed that case law and the historical context of the Dragonetti Act reveal that wrongful "civil proceedings" pursuant thereto exist only when a party initiates a **lawsuit** with malicious motive and lacking probable cause.  *Id.* at 13-14, *citing Werner v. Plater-Zyberk*, 799 A.2d 776 (Pa. Super. 2002); *Pawlowski v. Smorto*, 588 A.2d 36 (Pa. Super. 1991); *P.J.A. v. H.C.N.*, 156 A.3d 284 (Pa. Super. 2017); *Rosen v. American Bank of Rolla*, 627 A.2d 190 (Pa. Super. 1993).

The court rejected appellees' argument for a broad interpretation of what constitutes actionable civil proceedings based on the definition of "proceeding" contained in Section 102 of Title 42, where the Dragonetti Act is codified.  42 Pa.C.S. §102.  Section 102 defines a "proceeding" as including "every declaration, petition or other application which may be made to a court under law or usage or under special statutory authority, but the term **does not include** an action or an appeal."  42 Pa.C.S. §102 (emphasis

added).  The trial court noted an "action" is defined under Section 102 as "[a]ny action at law or equity."  Trial Court Op., 8/29/17 at 12.  The court determined appellees' suggested reading would lead to an illogical result because the Dragonetti Act would not apply to actions at law, to which it expressly does apply.  *See* 42 Pa.C.S. §§102 and 8351(a).

The court thus sustained the preliminary objections to Count I, and reasoned as follows:

> [A] review of the text of the Dragonetti Act, the binding precedent from the appellate courts, and the common law upon which the Dragonetti Act is based, supports the conclusion the phrase "procurement, initiation, or continuation of civil proceedings" means the filing of a civil action, and [does] not includ[e] a request for sanctions in a post-trial motion.
>
> In the case *sub judice*, the Messa Defendants and the D'Annunzio Defendants did not commence an action for sanctions against Plaintiffs; rather the Messa Defendants and the D'Annunzio Defendants requested, within their post-trial motion, Plaintiffs be sanctioned and/or found in contempt.  Requesting sanctions and/or a finding of contempt as part of a post-trial motion does not constitute the "procurement, initiation, or continuation of civil proceedings" under the Dragonetti Act because the request for sanctions, made in a post-trial motion, was not an action.  Furthermore, since a request for sanctions contained within the post-trial motion was not a "civil proceeding" and since Plaintiffs were not parties in the *Sutch* matter, they lack standing to prosecute the instant suit.

Trial Court Op., 8/29/17 at 14-15.[4]

## B. Superior Court

---

[4] Specifically with regard to whether Raynor and her firm had standing to bring the Dragonetti action, the trial court noted a court must generally consider whether a party has standing to bring a suit prior to determining the merits of the case.  Trial Court Op., 8/29/17 at 10, *citing, inter alia, Kuropatwa v. State Farm Ins. Co.*, 721 A.2d 1067, 1069 (Pa. 1998) ("A party seeking judicial resolution of a controversy in this Commonwealth must, as a prerequisite, establish . . . standing to maintain the action.").  The court observed the case presented "the rare scenario in which the [c]ourt must consider the merits of [Raynor's] claim before resolving the question of standing because [her] standing to bring the suit is dependent upon the definition of "procurement, initiation or continuation of civil proceedings" adopted by the [c]ourt."  *Id.*

On an appeal filed by Raynor and her firm, the Superior Court disagreed with the trial court's analysis and reversed in part.[5] *Raynor v. D'Annunzio*, 205 A.3d at 1261-62. As to the question of whether civil proceedings that are actionable under the Dragonetti Act include contempt proceedings raised via post-trial motion, the panel held the trial court erred, and concluded the contempt motion in this case represented the procurement, initiation, or continuation of civil proceedings for purposes of Dragonetti liability. *Id.* The panel so held, in part, because a civil contempt proceeding is "similar" to a civil lawsuit, in that it places the burden of proof on the complaining party to establish, by a preponderance of the evidence, that the defendant is non-compliant with a court order. *Id.* at 1261. Moreover, the panel noted that proceedings on the motion for contempt took place after the order granting a new trial had been affirmed and the record was remanded. In the panel's opinion, the subsequent contempt proceedings were thus "tantamount" to a "civil proceeding," noting the parties exchanged pleadings, the court conducted a hearing, and adjudicated the matter. *Id.* The panel concluded, "we . . . find that a contempt proceeding in this case following the remand of the record by this court does represent a 'procurement, initiation, or continuation of civil proceedings' as contemplated by the Dragonetti Act." *Id.*

The Superior Court then turned to the second issue before it, *i.e.*, whether Raynor and her firm lacked standing to bring a Dragonetti action against plaintiffs' counsel because those lawyers were not "parties" to the underlying medical malpractice action.

---

[5] The Superior Court affirmed the trial court's dismissal of the counts alleging wrongful use of civil proceedings and abuse of process, but there was no appeal of that decision and dismissal of those counts is not before us.

The panel acknowledged Superior Court precedent that a Dragonetti claim "'cannot be maintained by one who is not an original party to the underlying action.'" *Id.* at 1262, *quoting Hart v. O'Malley*, 647 A.2d 542, 549 (Pa. Super. 1994) (*Hart I*), *affirmed* 676 A.2d 222 (Pa. 2006) (*Hart II*). Nevertheless, the panel summarily concluded:

> It is of no import, however, that [Raynor and her firm] were not original parties to the underlying medical malpractice lawsuit that gave rise to the request for a finding of contempt and sanctions. As discussed in detail above, [they] have established that they brought forward a viable cause of action pursuant to the Dragonetti Act. Because [Raynor and her firm] were the defendants in the contempt proceedings that gave rise to the Dragonetti cause of action presently before us and were the parties against whom sanctions were imposed, we find that [they] have standing.

*Id.*

### III. The present Appeal

This Court accepted review of the following issues, as phrased by appellants:

1. Whether a request for contempt/sanctions against counsel (among others) contained within a motion for post-trial relief constitutes "civil proceedings" actionable under the Dragonetti Act?

2. Did the Superior Court attempt to create new Pennsylvania law — in contravention of a number of appellate decisions — giving [appellee], a disqualified attorney, standing to assert a cause of action under the Dragonetti Act when she was not a party to the underlying action?

*Raynor v. D'Annunzio*, 219 A.3d 600 (Pa 2019).

### A.

### Arguments of the D'Annunzio and Messa appellants

With respect to the first issue before this Court, the D'Annunzio appellants assert Superior Court precedent provides the "procurement, initiation or continuation of civil proceedings" for purposes of Dragonetti Act liability requires filing a "civil action." The D'Annunzio appellants submit a "civil action" is not "each individual motion within a case."

Brief of D'Annunzio Appellants at 35, *citing Rosen*, 627 A.2d at 193 (dismissing Dragonetti claim because "essence of the tort is the institution of a civil action[;]" and noting issuance of subpoena "did not constitute the commencement of a civil action . . . as contemplated by the statute.") The D'Annunzio appellants assert "individual motions, filings, and the like will not support a Dragonetti claim[.]" *Id.*, *citing Pawlowski*, 588 A.2d at 39 (no claim available under the Act for filing preliminary objections); *P.J.A. v. H.C.N.*, 156 A.3d at 294 (defendant's new matter in custody case "does not readily fall within the normal category of pleadings that give rise to Dragonetti litigation.").

The Messa appellants echo this argument and observe the Superior Court's interpretation of the phrase "civil proceedings" is overbroad and contrary to Pennsylvania jurisprudence. Brief of the Messa Appellants at 17. The Messa appellants maintain the tort addressed by the Act arises only "'when a party institutes a lawsuit with a malicious motive and lacking probable cause.'" *Id.* at 17-18, *quoting McNeil v. Jordan*, 894 A.2d 1260, 1274 (Pa. 2006). They insist the Dragonetti Act does not contemplate claims arising from the filing of a motion, petition or application. *Id.*, *citing Rosen*, 627 A.2d at 193; *Pawlowski*, 588 A.2d at 38. The Messa appellants instead endorse the trial court's refusal to interpret the statutory definition of "proceeding" at 42 Pa.C.S. §102 to include "motions, petitions or applications," and submit "[t]he trial court astutely rejected that interpretation because doing so would mean that the term 'civil proceedings' would result in the illogical exclusion of 'actions.'" *Id.* at 17 (emphasis deleted).

In addition, all appellants argue the plain language of the Act makes clear an intra-case motion does not constitute civil proceedings and observe Sections 8351-54 of the Act all specifically reference wrongful procurement, initiation or continuation of civil proceedings. Brief of D'Annunzio Appellants at 36-37, *citing* 42 Pa.C.S. §§8351-54. Appellants compare the current Act to an earlier version (including Section 8355) that

provided a mechanism by which parties and counsel could be sanctioned for a broader category of filings that included "pleadings, motions or other papers" not grounded in law or fact. *Id.* at 35-37, *quoting* former 42 Pa.C.S. §8355 (suspended by Pa.R.Civ.P. 1023.1(e), effective July 1, 2002); *see also* Brief of Messa Appellants at 23 (observing language in former Section 8355 of the Act (now contained in Pa.R.Civ.P. 1023.1) indicates pleadings, motions and other papers were never intended to be encompassed within "civil proceedings" actionable under Sections 8351-54). Appellants maintain this revision clearly evidenced the legislature's intent to create a different scheme and alter the remedy available for the wrongful filing of pleadings, motions and other papers. Brief of D'Annunzio Appellants at 37. Appellants note Section 8355 would have been unnecessary if "motions and other papers" were encompassed in the Act as "civil proceedings." *Id.* Appellants insist the legislature did not envision piecemeal litigation under the Act resulting from the submission of individual motions, petitions or filings other than the commencement of a civil action, and further note this Court absolutely suspended Section 8355 of the Act and replaced it with Pa.R.Civ.P. 1023.1, which provides procedures and rules regarding sanctions for pleadings, written motions, and other papers directed to the court for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *See* Pa.R.Civ.P. 1023.1(c)(1)-(4), (d).[6]

---

[6] **Rule 1023.1. Scope. Signing of Documents. Representations to the Court. Violation**

. . .

**(c)** The signature of an attorney or pro se party constitutes a certificate that the signatory has read the pleading, motion, or other paper. By signing, filing, submitting, or later advocating such a document, the attorney or pro se party certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,

The D'Annunzio appellants further observe the Superior Court's decision, which fails to recognize the replacement of Section 8355 with Pa.R.Civ.P. 1023.1, vastly expanded the scope of the Act to apply to every unsuccessful motion for discovery, sanctions, or costs that results in a hearing, and every motion filed pursuant to Rule 1023.1. The D'Annunzio appellants note Section 8355 of the Act was the only plausible avenue for Dragonetti liability based on a post-trial motion for contempt and it has been suspended. Appellants argue the Superior Court's decision is squarely at odds with decades of settled precedent, creates new law, and unnecessarily expands the scope of the Act, which will open the courts to "ever more litigation about litigation." Reply Brief of the D'Annunzio Appellants at 2.

With respect to standing, the D'Annunzio appellants offer there may be instances in which a non-party lawyer may assert a claim under the Act, but this is not such a case.

---

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation,

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law,

(3) the factual allegations have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual allegations are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

**(d)** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (c) has been violated, the court may, subject to the conditions stated in Rules 1023.2 through 1023.4, impose an appropriate sanction upon any attorneys, law firms and parties that have violated subdivision (c) or are responsible for the violation.

Pa.R.Civ.P. 1023.1(c)(1)-(4), (d). The Superior Court did not address this aspect of the case.

Observing "[a] requisite element of a Dragonetti claim is that 'the proceedings have terminated in favor of the person against whom they are brought,'" the D'Annunzio appellants assert Raynor and her firm lack standing to bring a claim under the Act because they do not meet the requirement of a fully-prevailing party below because their client, Sutch, won jury awards in both trials in the underlying medical malpractice matter, and Raynor was disqualified as counsel and sanctioned for her conduct in separate proceedings. Brief of D'Annunzio Appellants at 47, *quoting* 42 Pa.C.S. §8351(a)(2) The Messa appellants similarly observe under a plain reading of the Act, a Dragonetti plaintiff must have been a party to the underlying action that terminated in his or her favor. Brief of Messa Appellants at 24, *citing* 42 Pa.C.S. §8351(a) (Dragonetti claim arises out of "civil proceedings against another" where the "proceedings have terminated in favor of the person against whom they are brought"). The Messa appellants assert the Act "certainly does not permit counsel for a party to assert a cause of action independently." *Id.* at 24-25 (emphasis omitted), *citing Pawlowski*, 588 A.2d at 39 (Superior Court affirmed sustaining preliminary objections where Dragonetti plaintiff was not a party to underlying action but merely counsel); *Rosen*, 627 A.2d at 193 ("an action under 42 Pa.C.S.A §8351 cannot be maintained by one who was not a party to the underlying action"); *Hart I*, 647 A.2d at 549 ("[c]ase law has consistently stated, in a variety of circumstances, that an action under [the Dragonetti Act] cannot be maintained by one who is not an original party to the underlying action"). The Messa appellants highlight the underlying medical malpractice action was not brought against Raynor, and in any event, that action did not terminate in favor of her clients; thus Raynor lacked standing to bring the Dragonetti action against appellants.

**B. Arguments of appellees Raynor and her firm**

Addressing the first issue presented, appellees acknowledge "Dragonetti Act claims are most commonly presented in the context of an entire civil action or case[,]" Brief of Appellees at 40, 43, but assert the Superior Court properly reversed the trial court's *per se* ruling Dragonetti liability occurs only in that context. Appellees argue, under the circumstances of this case, the Superior Court's determination that the sanction/contempt proceedings were "tantamount to the filing of a civil lawsuit[,]" was appropriate because "a civil contempt proceeding has all, or many, of the normal indicia of a civil lawsuit." *Id.* at 35, 36. Appellees emphasize the Act "is entitled 'Wrongful use of civil proceedings,' not 'Wrongful use of a civil lawsuit.' In defining the elements of [a] Dragonetti claim, the Act uses the term 'civil proceedings,' and 'another;' it does not use the terms 'civil action,' 'civil case,' 'civil lawsuit,' or 'defendant.'" *Id.* at 37. Appellees assert "if the Pennsylvania Legislature intended to restrict the Dragonetti Act's application exclusively to a person's improper procurement, initiation, or continuation of an entire civil lawsuit, it could have made that intention clear, through different word choices." *Id.* at 38.

While maintaining their position "is strongly grounded in the language of the Act" *id.* at 38, appellees insist appellants have waived their "legislative history argument" premised on the differences between the language contained in sections 8351-54 of the Act, referencing civil proceedings, and the language contained in former Section 8355 relating to pleadings, motions or other papers. Appellees assert the argument was never presented to the trial court, and although raised before the Superior Court, "the argument could play no proper part in the Superior Court's analysis, and it can play no part in this Court's resolution of [the consolidated] appeals." *Id.* at 39.[7]

_____

[7] The Messa appellants maintain they have not waived any arguments regarding the "legislative history" of the Act because they raised those arguments in their Superior Court brief, where, as appellees, they had no burden of issue preservation. They further

On the merits, appellees posit the case law upon which appellants and the trial court relied does not stand for the proposition that "civil proceedings" must consist of a lawsuit for purposes of the Act. For instance, appellees assert the filings at issue in *Pawlowski*, *supra* (preliminary objections regarding service of writs), and *P.J.A.*, *supra* (filing new matter), were designed to bring a lawsuit to an end, and thus the Superior Court in both instances "found lacking . . . the 'procuring, initiation or continuance' element[,]" of actionable "civil proceedings" and not the initiation of something less than a lawsuit. Brief of Appellees at 41. Appellees concede the Superior Court in *Rosen* held that the service of a subpoena on a third party could not serve as the basis for a claim under the Dragonetti Act because it did not constitute the commencement of a civil action against the underlying defendant, but claim *Rosen* is distinguishable from the instant case. Specifically, according to appellees, "[u]nlike this case, the plaintiff was not seeking redress from Mr. Rosen for an injury it had suffered[.]" *Id.* at 42. Thus, according to appellees, the Dragonetti action "was not tantamount to a lawsuit." *Id.* Appellees also distinguish *Walsavage v. Nationwide Ins. Co.*, 633 F.Supp. 378 (E.D. Pa. 1986), where the court held an insurer's filing of frivolous new matter could not serve as the basis for a Dragonetti claim because a "claim" is a "cause of action," but the new matter at issue was a "defense." *Id.* Here, appellees contend, the subject pleading was in fact a claim tantamount to a cause of action and thus a "civil proceeding" under the Act.

Appellees also rely on *Krisa v. Equitable Life Assur. Soc.*, 109 F.Supp.2d 316 (M.D. Pa. 2000) (defendant's motion to amend answer to include fraud counterclaim deemed civil proceeding for purposes of Dragonetti Act), and *Shaffer v. Stewart*, 473 A.2d 1017 (Pa. Super. 1984) (caveat filed with Register of Wills to challenge/delay immediate

maintain appellees have offered no legal support for their assertion appellants cannot offer additional legal analysis for an issue properly preserved for appeal which goes directly to the basis of the demurrer sought in their preliminary objections.

probate of will deemed civil proceeding for purposes of Dragonetti Act). Appellees assert these cases demonstrate "that the improper 'procurement, initiation or continuation' of a motion, petition, or application like the Contempt Claim here, provides a fully sufficient basis for a Dragonetti claim, assuming all other elements of the statute are met." Brief of Appellees at 45 (emphasis omitted).[8] With respect to standing, appellees argue it "is not an independent issue but, rather, relies on the determination of whether the underlying claim at issue comprises 'civil proceedings' as that term is used in the Act." *Id.* at 47. Appellees observe that under the Act a claim may be brought against "'a person who takes part in the procurement, initiation or continuation of civil proceedings **against another**.'" *Id.*, *quoting* 42 Pa.C.S. §8351 (emphasis supplied by appellees). Appellees assert "[s]o long as the Dragonetti plaintiff is an 'other' against whom a Dragonetti defendant procured, initiated or continued 'civil proceedings,' that plaintiff will have standing to bring a claim under the Act." *Id.*

Appellees reject appellants' contention the Superior Court's decision will drastically expand litigation under the Dragonetti Act because the decision was specific to this case

---

[8] Appellees cite to a number of unpublished federal district court cases which purportedly suggest "a Dragonetti Act defendant is not required to have procured, initiated or continued an entire civil action or case in order for a cognizable claim to be made under the Act." Brief of Appellees, at 43 (emphasis omitted), *citing Norco v. Allstate Insurance Co.*, 2012 U.S. Dist. LEXIS 128343 (W.D. Pa. July 27, 2012) (settlement petition deemed civil proceeding for purposes of Dragonetti Act); *A.G. Cullen Construction Inc. v. Traveler's Casualty and Surety Co. of America*, U.S. Dist. LEXIS 11683 (W.D. Pa Feb. 12, 2009) (motion for preliminary injunction deemed civil proceeding for purposes of Dragonetti Act); *Pirkle v. Ogontz Controls Co.*, 1992 U.S. Dist. LEXIS 9591 (E.D. Pa. July 8, 1992) (same). We note the majority of opinions issued by federal circuit courts are unpublished and designated by those courts as non-precedential. A recent United States Supreme Court dissent highlights the controversy surrounding circuit courts issuing unpublished opinions, as the practice allows a circuit court to intentionally avoid creating binding case law. *See Plumley v. Austin*, 135 S. Ct. 828, 831 (2015) (Thomas, J., dissenting).

where the contempt/sanctions motion was "tantamount" to a civil action. *Raynor*, 205 A.3d at 1261. According to appellees, not all motions and pleadings are tantamount to a civil action, and discovery motions are unlikely to fall under the Act's ambit. Appellees conclude the Act is a valuable shield against baseless or frivolous claims, and this Court has already rejected the attempt to immunize attorneys from its purview. Brief of Appellees at 51, *citing Villani*, *supra*.

## IV. Analysis

Our standard of review in this appeal arising from an order sustaining preliminary objections in the nature of a demurrer is *de novo*, and our scope of review is plenary. *See Ladd v. Real Estate Commission*, 230 A.3d 1096, 1103 (Pa. 2020), *citing Mazur v. Trinity Area Sch. Dist.*, 961 A.2d 96, 101 (Pa. 2008). "We recognize a demurrer is a preliminary objection to the legal sufficiency of a pleading and raises questions of law; we must therefore 'accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts.' A preliminary objection in the nature of a demurrer 'should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted.'" *Id.* (internal citations omitted)*, quoting Yocum v. Commonwealth, Pennsylvania. Gaming Control Bd.*, 161 A.3d 228, 234 (Pa. 2017).

The Dragonetti Act is a codification of the common law cause of action for wrongful or malicious use of civil proceedings: a Dragonetti defendant may be held liable when he "takes part in the procurement, initiation or continuation of civil proceedings against another" and in doing so "acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based." 42 Pa.C.S. §8351(a), (a)(1). For a successful claim under the Act, the underlying proceedings must

have terminated in favor of the Dragonetti plaintiff. *Id.* §8351(a)(2). However, a Dragonetti defendant establishes probable cause for bringing the underlying civil proceedings if he reasonably believes in the existence of the facts upon which the claim is based, and either:

> (1) reasonably believes that under those facts the claim may be valid under the existing or developing law;

> (2) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or

> (3) believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa.C.S. §8352.

Notwithstanding the legislature's use of the amorphous term "civil proceedings," Dragonetti Act case law initially developed to allow those who had been named as defendants in civil actions to sue those who sued them if they could properly plead the actions were a wrongful use of civil proceedings. Standing to bring a Dragonetti action thus was limited to those who were named defendants in the underlying lawsuit. *See e.g. Rosen*, 627 A.2d 190; *Hart II*, 676 A.2d 222.[9]

---

[9] In *Rosen* and *Hart II*, standing as a party was examined **prior** to whether a "civil proceeding" existed pursuant to the Act, and in both cases, standing was the determinative fact in whether a "civil proceeding" existed. In *Rosen*, the Dragonetti plaintiff (Rosen) was an attorney who had, in the underlying action, been subpoenaed to give a deposition regarding a settlement he had made for one of his clients. The Superior Court opined Rosen did not have standing under the Act because he was not a "party" to the underlying lawsuit, and no "civil proceeding was procured, instituted or continued against Rosen." *Rosen*, 627 A.2d at 193. In *Hart II*, this Court recognized an exception to the rule that only a named party could sue under the Act. In that case, the Court ruled landowners who were not named parties but whose property rights were adversely affected by an injunction issued against them in the underlying proceedings, *ex parte*, had standing to pursue relief under the Act. *Hart II*, 676 A.2d at 225.

**A. Statutory Construction of the term "Civil Proceeding" under the Act**

We first determine whether the challenged filing in the underlying suit — here, a post-trial motion seeking a finding of contempt and sanctions — qualifies as the "procurement, initiation or continuation of civil proceedings" contemplated under the Act. We are guided by the Statutory Construction Act, 1 Pa.C.S. §§1501-1991, and our goal is to ascertain and effectuate the legislature's intent. 1 Pa.C.S. §1921(a). "The best indication of legislative intent is the plain language of the statute." *Roverano v. John Crane, Inc.*, 226 A.3d 526, 535 (Pa. 2020), *citing Matter of Private Sale of Prop. by Millcreek Twp. Sch. Dist.*, 185 A.3d 282, 290-91 (Pa. 2018). "In ascertaining the plain meaning, we consider the statutory language in context and give words and phrases their 'common and approved usage.'" *Id.*, *quoting Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1027 (Pa. 2018). When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). "'Only if the statute is ambiguous, and not explicit, do we resort to other means of discerning legislative intent.'" *Roverano*, 226 A.3d at 535, *quoting Millcreek Twp. Sch. Dist.*, 185 A.3d at 291; 1 Pa.C.S. §1921(c).

When "the words of the statute are not explicit, the General Assembly's intent is to be ascertained by considering matters other than statutory language, like the occasion and necessity for the statute; the circumstances of its enactment; the object it seeks to attain; the mischief to be remedied; former laws; consequences of a particular interpretation; contemporaneous legislative history; and legislative and administrative interpretations." *Pa. Associated Builders & Contrs., Inc. v. Commonwealth Dep't of Gen. Servs.*, 932 A.2d 1271, 1278 (Pa. 2007); 1 Pa.C.S. §1921(c). "The [Statutory Construction] Act provides that '[w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage'; and that 'technical

words and phrases and such others as have acquired a peculiar and appropriate meaning . . . shall be construed according to such peculiar and appropriate meaning or definition.'" *Id., quoting* 1 Pa.C.S. §1903(a). "Further, if the General Assembly defines words that are used in a statute, those definitions are binding." *Id.*, *citing Commonwealth v. Kimmel*, 565 A.2d 426, 428 (Pa. 1989). The Act allows a court to presume that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable; that the General Assembly intends the entire statute to be certain and effective, and intends to favor the public interest as against any private interest. 1 Pa.C.S. §1922(1), (2), (5). Moreover, the Act sets forth rules for a court to follow when provisions in or among statutes are in conflict and cannot be reconciled. 1 Pa.C.S. §§1933-36.

The plain language of the Act imposes liability on a person who "takes part in the **procurement, initiation or continuation of civil proceedings** against another[,]" if that person "acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the **claim in which the proceedings** are based." 42 Pa.C.S. §8351(a)(1) (emphasis added). Moreover under Section 8352 of the Act, a person who "takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes," among other things, "as an attorney of record, in good faith that his procurement, initiation or continuation of a **civil cause** is not intended to merely harass or maliciously injure the opposite party." 42 Pa.C.S. §8352 (emphasis added). Significantly, although the Act does not define the words "proceeding" "claim" or "cause," the phrase "procurement, initiation or continuation of civil proceedings" as it appears at Sections 8351(a)(1) and 8352 is applied to "claim[s] in which the proceedings are based" and the "procurement, initiation or continuation of a civil cause."

Consequently, to the extent proceedings, claims, and causes may be separately defined, we find the term "civil proceedings" as used in the Act to be ambiguous.

To resolve this ambiguity, we look to Title 42 of the Judicial Code, in which the Act is contained, and which provides a definitions section. *See* 42 Pa.C.S. §102. The Judicial Code provides the following instructive definitions: "matter" is defined as an "[a]ction, proceeding or appeal," and a "proceeding" is defined as "every declaration, petition or other application which may be made to a court under law or usage or under special statutory authority, but the term does not include an **action** or an **appeal**." *Id.* (emphasis added).[10] We note the "proceeding" at issue here is a post-trial motion for contempt, which may be described as an "application," rather than a "declaration" or "petition." *See id.* However, although a proceeding can encompass any "petition or other application" — presumably including a post-trial motion for civil contempt — a "proceeding" cannot include an "action," which is defined and commonly understood as any action in law or equity, or to put a finer point on it, any **cause of action** in law or equity. Thus, "civil proceedings" as referenced in the Act cannot include both the filing of motions within a case and the filing of complaints to initiate a case because those separate legal undertakings are independently defined under the Judicial Code to exclude one another.

We reiterate the rules of statutory construction indicate we must presume the legislature does not intend a result that is absurd, impossible of execution or unreasonable. 1 Pa.C.S. §1922(1). We recently held the Act "manifests a legislative purpose to compensate victims of frivolous and abusive litigation[.]" *Villani*, 159 A.3d at 491, *citing Dooner v. DiDonato*, 971 A.2d 1187, 1201 (Pa. 2009) (common law tort laws

---

[10] The Judicial Code further defines "action" as "[a]ny action at law or in equity." 42 Pa.C.S. §102. An "appeal" is defined as "[a]ny petition or other application to a court for review of subordinate governmental determinations. . . . Where required by the context, the term includes proceedings on petition for review." *Id.*

"necessarily perform an important remedial role in compensating victims of torts"). This legislative purpose would indeed be undermined if frivolous and abusive "civil proceedings" included motions but excluded the actions at law or equity within which they are lodged. Moreover, such an interpretation would be contrary to our decisions applying the Act that consistently uphold Dragonetti claims for the commencement of actions at law, while rejecting purported Dragonetti claims for intra-case filings, such as preliminary objections or subpoenas. *Compare, e.g. Villani*, 159 A.3d at 479-80 (Dragonetti Act properly brought to challenge wrongful initiation of quiet title action and ejectment proceedings); *Hart II*, 676 A.2d at 225 (Dragonetti Act properly brought to challenge *ex parte* proceeding seeking injunction), *with Rosen,* 627 A.2d at 193 (issuance of subpoena did not qualify as commencement of civil action for claim under Act); *Pawlowski*, 588 A.2d at 39 (no claim available under Act for filing preliminary objections); *P.J.A. v. H.C.N.*, 156 A.3d at 294 (defendant's new matter in custody case "does not readily fall within the normal category of pleadings that give rise to Dragonetti litigation."). Consequently, the intra-case filing at issue in this case — the post-trial motion for contempt — does not qualify as an actionable "civil proceeding" as contemplated under the Act.

Furthermore, appellees cannot escape the fact that a separate civil rule specifically authorizes sanctions for pleadings, written motions, and other papers directed to the court that are presented for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, *see* Pa.R.Civ.P. 1023.1(c)(1)-(4), (d). If motions filed within lawsuits were considered to be actionable "civil proceedings," it would render either the rule or the Act superfluous, which is contrary to established rules of statutory construction. *See Matter of Employees of Student Servs., Inc.*, 432 A.2d 189, 195 (Pa. 1981) ("whenever possible each word in a statutory provision is to be given

meaning and not to be treated as surplusage"); 1 Pa.C.S. 1921(a) ("[e]very statute shall be construed, if possible, to give effect to all its provisions).

We conclude, therefore, that intra-case filings, such as the subject post-trial motion for contempt and/or sanctions — do not constitute the "procurement, initiation or continuation of civil proceedings" as contemplated under the Dragonetti Act. The Superior Court erred when it held otherwise.

### B. Raynor's Standing to Bring a Claim under the Act

The second issue upon which we granted review is whether appellees had standing to bring a claim under the Act when they were not parties in the underlying medical malpractice litigation. The lower tribunals addressed standing **after** determining whether filing a motion for contempt is actionable as the procurement, initiation or continuation of civil proceedings. As the trial court determined a motion for contempt cannot be characterized in that manner, it summarily determined Raynor and her firm lacked standing to bring the Dragonetti claim. The Superior Court, on the other hand, upon determining a motion for contempt is "tantamount" to the procurement, initiation or continuation of civil proceedings, summarily determined Raynor and her firm had standing to bring the Dragonetti action. *See, e.g., Hart II*, 676 A.2d at 225 ("one who was not a party to the underlying action cannot sue under [Dragonetti]"). We agree that standing becomes relevant only when the challenged filing constitutes the procurement, initiation or continuation of civil proceedings under the Act.

Accordingly, given our holding on the first issue above, we need not reach or resolve the issue of standing.

The order of the Superior Court is reversed and the matter is remanded to the trial court for the entry of summary judgment in favor of appellants.[11]

Justices Baer, Todd, Wecht and Mundy join the opinion.

Justice Wecht files a concurring opinion.

Chief Justice Saylor files a dissenting opinion in which Justice Donohue joins.

---

[11] We note this rancorous dispute and protracted litigation between the parties has gone on long enough, and given our resolution of the issues, it is fair to say we expect the matter to end here, and we would take a dim view of further proceedings.